# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 16-224-DLB-CJS

WILLIAM VIRGIL                                                                 PLAINTIFF


vs.                          **MEMORANDUM OPINION AND ORDER**


CITY OF NEWPORT, et al.                                            DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    In September 1988, a jury convicted Plaintiff William Virgil of raping and murdering Retha Welch.  He was sentenced to seventy years in prison.  Twenty-eight years later, Virgil was exonerated by DNA evidence.  Pursuant to 42 U.S.C. § 1983, Virgil filed the instant action seeking recompense for violations of his constitutional rights, as well as various state-law torts, against three municipal governments—the City of Newport, the City of Cincinnati, and the City of Norwood—and thirteen individual officers—Steve Daniels from the Norwood Police Department; Mike Slayback, Robert Cardone, and Mike Phillips from the Cincinnati Police Department; and Marc Brandt, Norm Wagner, Pat Moore, Howard Neimeier, Sarah Desentz, Robert Bradford, Ken Page, Rick Sears, and Tom Fromme from the Newport Police Department (collectively, the "Individual Newport Defendants").  (Doc. # 1).  The Court has federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    On April 13, 1987, Retha Welch's body was found at the Yacht and Tennis Club in

Newport, Kentucky.[1]  (Doc. # 52 at ¶ 22).  The Newport Police Department commenced an investigation, and ten days later, on April 23, 1987, Plaintiff William Virgil was arrested for the rape and murder of Ms. Welch.  *Id.* at ¶¶ 24, 29.

During the course of the investigation and after his arrest, Virgil alleges that officers with the Newport Police Department failed to conduct a proper investigation and failed to disclose material exculpatory evidence regarding alternative suspects to the prosecutor. *Id.* at ¶¶ 54-73.  Virgil also alleges that Newport police officers "conducted a joint investigation into the murder of Ms. Welch and other similar unsolved homicide[s] in the area" with police officers from Cincinnati and Norwood.  *Id.* at ¶ 74.  Although the joint investigation "develop[ed] theories of the murders and identif[ied] alternate suspects," including a potential serial killer, "[n]one of this information, including information related to and derived from the joint investigation for all three unsolved murders, was shared with" the prosecutor, Virgil, or his counsel.  *Id.* at ¶¶ 76-77.

In addition to the investigative failings and the withholding of exculpatory evidence, Virgil claims that the police-officer defendants conspired to frame him and manufactured inculpatory evidence against him.  Specifically, Virgil alleges that on September 28, 1987, Newport Detective Norm Wagner coerced Joe Womack, an inmate incarcerated with Virgil at the Lebanon Correctional Institution, to become a "jailhouse snitch" and to provide a false statement that Virgil had confessed to the rape and murder of Ms. Welch.  *Id.* at ¶¶ 31-35.  In addition to threatening to charge Womack with Ms. Welch's murder, Detective Wagner allegedly promised Womack release from prison.  *Id.* at ¶¶ 33-35.  After

---

[1]    Given the present procedural context, the factual summary that follows is taken from Virgil's Second Amended Complaint (Doc. # 52) and construed in his favor.  *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citations omitted).

this encounter at the Lebanon Correctional Institution, Womack was transferred to a jail in Newport, Kentucky. *Id.* at ¶ 37. During his incarceration in Newport, police officers from the Newport Police Department allegedly provided him with money, rehearsed his false testimony, and provided Womack with a "cheat sheet" of the murder's details to prepare for his testimony before the grand jury. *Id.* at ¶¶ 38-42. Womack was transported from the jail to the courthouse by Newport police officers, where he testified before the grand jury, and later, at trial. *Id.* at ¶¶ 43-44.

In September 1988, a jury convicted Virgil of the rape and murder of Ms. Welch. *Id.* at ¶ 82. He was sentenced to seventy years in prison. *Id.* On December 18, 2015—approximately twenty-eight years and eight months later—after DNA testing suggested Virgil's innocence, he was released from custody and granted a new trial. *Id.* at ¶ 84. In 2016, the case against Virgil unraveled further—Joe Womack "revealed in a sworn declaration that his statement, testimony in front of the grand jury, and testimony at trial was false" and a "product of fabrication and coercion on the part of" Newport police officers. *Id.* at ¶ 46. On January 5, 2017, when the case against Virgil was re-presented to the grand jury, a no true bill of indictment was returned, and Virgil was exonerated. *Id.* at ¶ 85.

On December 16, 2016, Virgil filed the instant action alleging multiple constitutional violations, as well as state-law tort claims against the Defendants. (Doc. # 1). This matter is before the Court upon three motions seeking dismissal of Virgil's Second Amended Complaint. (Docs. # 67, 70, and 75). The motions are fully briefed (Docs. # 83, 85, 86, and 88), and ripe for review. For the reasons stated herein, the City of Norwood and Officer Steve Daniels's Motion to Dismiss (Doc. # 67) is hereby **granted in part and**

**denied in part**, the City of Newport's Motion to Dismiss (Doc. # 70) is hereby **granted in part and denied in part**, and the Individual Newport Defendants' Motion to Dismiss (Doc. # 75) is hereby **granted in part and denied in part**.

## II.     ANALYSIS

### A.     Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although "plaintiffs need not meet a 'probability requirement' … they must show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Wesley*, 779 F.3d at 427-28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)). "In ruling on the issue, a district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). After all, the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.*

### B.     Federal § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Because § 1983 "is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced," the Court's "first task … is to identify the specific constitutional or statutory rights allegedly infringed." *Meals v. City of Memphis*, 493 F.3d 720, 727-28 (6th Cir. 2007) (internal citations omitted). "That [a plaintiff] asserts claims under various constitutional provisions does not control [the Court's] inquiry." *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009). "Rather, the critical question is whether the 'legal norms' underlying those claims implicate clearly established constitutional rights." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

Virgil's Second Amended Complaint alleges that the Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments when they conducted a reckless investigation, deliberately withheld exculpatory evidence, and fabricated evidence and testimony. (Doc. # 52 at ¶¶ 107-130). Specifically, Plaintiff's Second Amended Complaint asserts eight causes of action based on those alleged constitutional violations.[2] Count One alleges a violation of Virgil's constitutional right to a fair trial under the Fourteenth Amendment, based on Defendants' deliberate withholding of exculpatory evidence. *Id.* at ¶¶ 107-115. Count Two alleges a violation of Virgil's constitutional right to be free from unlawful prosecution and continued detention without probable cause

---

[2]    Virgil's Second Amended Complaint also contains three state-law claims: negligent supervision, intentional infliction of emotional distress, and *respondeat superior*. (Doc. # 52 at ¶¶ 160-171).

under the Fourth Amendment, premised on Defendants' reckless investigation and deliberate withholding of exculpatory evidence. *Id.* at ¶¶ 116-125. And Count Three alleges a violation of Virgil's constitutional rights under the Fourth and Fourteenth Amendments, based on Defendants' fabrication of evidence. *Id.* at ¶¶ 126-130. Counts Four, Five, Six, Seven, and Eight seek to impose supervisor liability, indirect liability, conspiracy liability, and municipal liability for the aforementioned constitutional violations. *Id.* at ¶¶ 131-159.

In their Motion to Dismiss, the Individual Newport Defendants argue that Virgil cannot pursue Counts One, Two, and Three simultaneously because they are based on the same alleged conduct and are "redundant." (Doc. # 75 at 5). Thus, as a threshold matter, the Court must determine whether Virgil can simultaneously pursue a Fourteenth Amendment due-process claim, a Fourth Amendment malicious-prosecution claim, and a Fourth Amendment fabrication-of-evidence claim.

In the simplest of terms, the answer is yes. In support of Counts One, Two, and Three, the Second Amended Complaint alleges that Defendants deliberately withheld exculpatory evidence and fabricated inculpatory evidence.[3] (Doc. # 52 at ¶¶ 107-130). Although those three counts allege violations of only two constitutional amendments— the Fourth and the Fourteenth—Virgil is not confined to asserting only two causes of action in his Complaint. The factual allegations based on Defendants' alleged withholding

---

[3] As mentioned above, Virgil also claims that the Defendants violated his constitutional rights by conducting a "reckless investigation." However, "there is no constitutionally protected right to the manner in which a criminal investigation is conducted." *Garner v. Harrod*, 656 F. App'x 755, 760 (6th Cir. 2016). Therefore, even if the Second Amended Complaint contains "sufficient facts to establish that the investigation was incompetent or negligent, an 'incompetent or negligent investigation' is insufficient to establish a constitutional violation." *Id.* at 761 (quoting *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001)). Therefore, Virgil's allegation that the Defendants "conducted a reckless investigation" does not state a claim under § 1983 upon which relief can be granted. Accordingly, the remainder of the Court's analysis will focus on the allegations that Defendants withheld and fabricated evidence.

of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), can support a Fourteenth Amendment due-process claim, as well as a Fourth Amendment malicious-prosecution claim. The Sixth Circuit has held so explicitly:

> Plaintiff's *Brady* and continued detention claims against [the Defendant] share a factual premise. This Court disagrees with the district court, however, that this similarity restricts Plaintiff to one theory of recovery over the other. The legal constructs of Plaintiff's continued detention claim, which allege a Fourth Amendment violation, are distinct from a [Fourteenth Amendment] *Brady* claim, which alleges a due process violation. Plaintiff alleges *both* that his detention was unlawfully continued due to [the Defendant's] failure to disclose exculpatory evidence (what Plaintiff and the district court term his 'malicious prosecution' claim) and that his right to a fair trial was abridged. The situs of the injury is distinct and therefore Plaintiff should be able to pursue both legal theories.

*Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006). The same is also true in this case. Virgil claims that by deliberately withholding exculpatory evidence, the Defendants violated his rights under both the Fourteenth Amendment (Count One) and the Fourth Amendment (Count Two). Because the situs of the alleged injuries are distinct, Virgil can pursue both legal theories presented in Counts One and Two.

The additional claim in Count Three, which alleges that Defendants fabricated evidence against Virgil in violation of his Fourth Amendment rights,[4] does not alter the analysis. Although Counts Two and Three both allege violations of the Fourth Amendment, the alleged conduct—withholding exculpatory evidence and fabricating inculpatory evidence—supports different claims. Accordingly, the Sixth Circuit routinely discusses and analyzes those claims separately. *See, e.g.*, *Gregory*, 444 F.3d at 744-

---

[4]     In the Second Amended Complaint, Virgil cites both the Fourth and Fourteenth Amendments in support of his fabrication-of-evidence claim. (Doc. # 52 at ¶¶ 126-130). However, § 1983 claims for fabrication of evidence are analyzed under the Fourth Amendment, not the Fourteenth Amendment. *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)) ("A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure.").

45; *Caminata v. Cty. of Wexford*, 664 F. App'x 496, 500 (6th Cir. 2016); *Cleary v. Cty. of Macomb*, 409 F. App'x 890, 898 (6th Cir. 2011). In fact, the Sixth Circuit recently held that a district court's combining of a fabrication-of-evidence claim and a withholding-evidence claim was "error." *Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) ("The district court combined the fabrication claim and the withholding claim into one, but this was in error. In *Gregory*, this court analyzed separately claims that a forensic expert withheld evidence and that the expert had fabricated evidence. This result is sensible, as the claims have different elements, most notably, that one involves the suppression of favorable evidence and the other the manufacture of damaging evidence.")

Accordingly, Virgil can simultaneously pursue Counts One, Two, and Three, which allege a Fourteenth Amendment due-process claim, a Fourth Amendment malicious-prosecution claim, and a Fourth Amendment fabrication-of-evidence claim, respectively. As the Sixth Circuit has instructed, "[i]t is not the role of this Court to restrict Plaintiff's choice of viable legal theories." *Gregory*, 444 F.3d at 750.

Having identified the specific constitutional rights allegedly infringed and determined that Virgil can simultaneously pursue each of the counts in his Complaint, the Court now turns to the merits of Virgil's claims. In this case, there is no dispute that Defendants were acting under color of state law. Therefore, the only remaining question is whether Virgil was "deprived of a right secured by the Constitution or the laws of the United States." *Redding*, 241 F.3d at 532. The Court will address each of Virgil's claims and the Motions to Dismiss in turn, on a party-by-party basis, construing the Complaint in the light most favorable to Virgil and accepting its allegations as true.

### 1.    Count One: Due Process

"Under *Brady v. Maryland*, the government has a constitutional obligation to furnish a criminal defendant with any exculpatory evidence related to the defendant's guilt or possible punishment." *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010) (citing *Brady*, 373 U.S. at 87). "[S]uppression by the prosecution of evidence favorable to an accused … violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "A successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; and (3) and that the state's actions resulted in prejudice." *Robinson*, 592 F.3d at 736 (citing *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008)).

"Although *Brady* imposes an absolute duty of disclosure only on prosecutors," the Sixth Circuit has held that "'the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police' to disclose evidence whose 'exculpatory value' is 'apparent' to officers." *Army v. Collins*, 488 F. App'x 957, 961-62 (6th Cir. 2012) (quoting *Moldowan*, 578 F.3d at 381, 388). "That duty is discharged once an officer delivers such evidence to the prosecutor's office." *Id.*

### i.    City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Steve Daniels seek dismissal of Count One, arguing that the Second Amended Complaint does not contain a sufficient factual basis to state a due-process claim against either Officer Daniels or the City of Norwood. (Doc. # 67 at 11-12). Specifically, the City of Norwood and Officer Daniels claim that the alleged meetings between officers from Norwood, Cincinnati, and Newport, and the subsequent

withholding of exculpatory information by Officer Daniels "cannot violate an out-of-state criminal defendant's rights to due process." *Id.* at 12. Thus, the City of Norwood and Officer Daniels argue that Officer Daniels "had no reason to believe Newport had not provided [the] required information to the prosecutor, and no obligation to monitor the discovery responses in a Kentucky trial." *Id.*

By contrast, Virgil claims that the factual allegations establish that "the Norwood Defendants developed suspects in the Welch homicide investigation" and then "withheld [that] material exculpatory evidence ... implicating an alternate suspect or suspects," which is sufficient to survive dismissal under Rule 12(b)(6). (Doc. # 83 at 8-11).

The obligations imposed by *Brady* are not limitless. The Sixth Circuit has joined other circuits in "confin[ing] prosecutors' sleuthing duties to material information possessed by members of the prosecution team." *Sutton v. Carpenter*, 617 F. App'x 434, 441 (6th Cir. 2015) (citing *Avila v. Quarterman*, 560 F.3d 299, 307-08 (5th Cir. 2009) (concluding that pathologist's exculpatory opinion could not be imputed to prosecution team because he did not play an active role in either the investigation or prosecution); *Moon v. Head*, 285 F.3d 1301, 1310 (11th Cir. 2002) (declining to presume Georgia prosecutor's knowledge of TBI investigation, in the absence of evidence that TBI worked with the Georgia prosecution team during the relevant investigation); *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996) (concluding that the prosecution had no obligation to inquire into exculpatory information possessed by other federal agencies when those agencies played no part in the relevant investigation or prosecution); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (imputing only knowledge of information gathered in connection with specific office's investigation of the case); *United*

*States v. Quinn*, 445 F.2d 940, 943-44 (2d Cir. 1971) (refusing to impute knowledge of any government agent to the prosecutor). Accordingly, the Sixth Circuit has "rejected *Brady* claims premised on evidence possessed by uninvolved government agencies." *Id.* (citing *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010)).

So limited, the *Brady* "duty extends [only] to information in the possession of the law enforcement agency investigating the offense." *Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002). Thus, a prosecutor has a "duty to discover 'favorable evidence known to … others acting on the government's behalf in the case.'" *Sutton*, 617 F. App'x at 442 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). It stands to reason that police officers' *Brady* obligations share the same limits—that is, police officers have a duty to disclose exculpatory evidence only if they are involved in the investigation or the prosecution at issue.[5]

Virgil alleges just that—that Officer Daniels was involved in the investigation. Specifically, the Second Amended Complaint alleges that the "Newport Defendant Officers were in frequent contact with members of the Norwood Police Department … relating to the investigation into the murder of Ms. Welch" and "conducted a joint investigation into the murder of Ms. Welch and other similar unsolved homicide[s] in the

---

[5] Such a rule is broad enough to encompass investigations that cross jurisdictional lines—*i.e.*, a joint federal-state or multi-state investigation—and narrow enough to exclude officers who are uninvolved or only tangentially connected to an investigation.

At least one other district court in this Circuit has adopted this reasoning. *See Harper v. Bohanan*, No. 3:97-cv-80, 2006 WL 1462574 (E.D. Tenn. May 23, 2006) ("Plaintiffs cite to no legal authority demonstrating that it was clearly established prior to 1986 that a law enforcement officer not associated with the agency conducting a criminal investigation violates the U.S. Constitution by failing to disclose exculpatory information in his possession to the agency conducting the investigation. Nor do they cite any legal precedent suggesting that a reasonable law enforcement officer should have known of his obligation to disclose hearsay evidence to a separate law enforcement agency investigating a crime unrelated to any investigation by his agency.").

area." (Doc. # 52 at ¶ 74). "As part of this joint investigation," the Complaint alleges that Officer Daniels "met [with Newport and Cincinnati officers] on a number of occasions with the purpose of developing theories of the murders and identifying alternate suspects, including their suspicion that a serial killer may have been responsible for all three murders." *Id.* at ¶ 76. The Complaint further alleges that "[n]one of the information, including information related to and derived from the joint investigation for all three unsolved murders, was shared with Mr. Virgil, his counsel, or the prosecutors on his case prior to his trial." *Id.* at ¶ 77. Therefore, the factual allegations contained in the Second Amended Complaint are sufficient to state a Fourteenth Amendment due-process claim against Officer Daniels and the City of Norwood.

### ii.  Individual Newport Defendants[6]

The Individual Newport Defendants seek dismissal of Count One on the basis of qualified immunity.[7] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

---

[6]  The Court will address Defendant City of Newport's Motion to Dismiss (Doc. # 70) in a separate and subsequent section, as Count Seven pleads a specific municipal-liability claim against the City of Newport. (Doc. # 52 at ¶¶ 150-154).

[7]  The Individual Newport Defendants also argue that Count One should be dismissed because it is "redundant" of Counts Two and Three, but as explained above, that argument has been rejected. *See supra* p. 6-8.

"Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law.'" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)). And "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231.

There is a "two-tiered inquiry" for resolving claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, the Court must determine whether "the facts alleged make out a violation of a constitutional right."[8] *Id.* If the plaintiff has shown a violation of a constitutional right, then the Court must proceed to the second step and "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated" the right. *Id.*

To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the Plaintiff's favor. *See Wesley*, 779 F.3d at 489. The Plaintiff bears "the burden of showing that" the Defendants are "not entitled to qualified immunity." *Johnson*, 790 F.3d at 653; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (citing *Wesley*, 779 F.3d at 428).

---

[8] The Court recognizes that the sequential procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) is no longer required. *See Pearson*, 555 U.S. at 227.

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (citing *Hunter*, 502 U.S. at 227). The Sixth Circuit, however, has clarified that only truly "insubstantial claims against government officials should be resolved … prior to broad discovery," *Johnson*, 790 F.3d at 653, and has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433. Thus, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433-34 (internal citations and quotation marks omitted).

With respect to the first prong of the qualified-immunity analysis, the Individual Newport Defendants have not argued that the facts alleged fail to make out a constitutional violation, nor could they. The Sixth Circuit has "determined that the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police" to "turn over potentially exculpatory evidence to the prosecutor's office." *Moldowan*, 578 F.3d at 381. The second prong of the qualified-immunity analysis—whether the *Brady* obligation for police officers to disclose exculpatory evidence was "clearly established" by September 1988, the time of Virgil's trial, such that a reasonable officer would have known that his conduct violated" Virgil's Fourteenth Amendment due-process rights—poses a more difficult question.

A constitutional right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "'[B]inding precedent from the Supreme Court, the Sixth Circuit, or the district court itself' can provide such clarity; persuasive authority from 'other circuits that is directly on point' may also demonstrate that a law is clearly established." *Occupy Nashville v. Haslam*, 769 F.3d 434, 443 (6th Cir. 2014) (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010)). "This is not to say that an official['s] action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. Nor must there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Put simply, the "salient question" is "whether the state of the law" in September 1988—the time of Virgil's trial—gave Defendants "fair warning" that their alleged withholding of exculpatory evidence was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Plaintiff bears "the burden of showing that a right is clearly established." *Toms v. Taft*, 338 F.3d 519, 525 (6th Cir. 2003) (citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)).

In *Moldowan*, the Sixth Circuit held that by at least August 1990, it was clearly established that police officers had a duty to disclose exculpatory evidence. *Moldowan*, 578 F.3d at 382. The alleged withholding of evidence in this case occurred in September 1988, approximately two years before the constitutional violations in *Moldowan*. Because of that time lapse, the Individual Newport Defendants claim that a police officer's duty to

disclose exculpatory evidence was not clearly established as of September 1988. (Doc. # 75 at 7). However, the Sixth Circuit's analysis in *Moldowan*, and a review of case law from other circuits, belies that assertion.

As the *Moldowan* Court noted, "[d]ecisions from other circuits recognizing the type of '*Brady*-derived' claims that [Virgil] asserts here date back as far as 1964." *Id.* (citing *Barbee v. Warden, Maryland Penitentiary*, 331 F.3d 842, 846 (4th Cir. 1964)). Specifically, the *Moldowan* Court relied on three opinions from other circuit courts and found that existing precedent placed the constitutional question beyond debate. *See Barbee*, 331 F.2d at 846 ("The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused."); *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988) (police officers' retention of "records in clandestine files deliberately concealed from prosecutors and defense counsel" violated *Brady* rule and plaintiff's right due process rights during his 1982 trial); *Geter v. Fortenberry*, 882 F.2d 167, 171 (5th Cir. 1989) (affirming denial of qualified immunity for police-officer defendant with respect to plaintiff's claim that the officer withheld exculpatory evidence during his 1982 trial).

Two of the three opinions that the Sixth Circuit relied on in *Moldowan* had recognized by September 1988 that this right was clearly established. *See Barbee*, 331 F.2d at 846; *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).[9] That one of

---

[9] That *Jones* was decided on September 14, 1988—during Virgil's trial—does not render the case meaningless as to the clearly established nature of the constitutional right, as the Individual Newport Defendants suggest. (Doc. # 75 at 8). In *Jones*, the Seventh Circuit determined that the withholding of exculpatory evidence by police officers was clearly established when the alleged constitutional violation occurred—at a trial in 1982. *Jones*, 856 F.2d at 995. Therefore, the date of the decision in *Jones* does not supply the "clearly established" date for the Seventh Circuit; rather, the decision in *Jones* simply serves as "persuasive authority" from another circuit that demonstrates that police officers' disclosure obligations were

the circuit court opinions that the Sixth Circuit relied on—*Geter v. Fortenberry*, 882 F.2d 167 (5th Cir. 1989)—was not decided until September 1989, one year after Virgil's trial, does not tip the "clearly established" scales in favor of the Defendants.  In fact, *Geter* had an earlier, companion case by the same name, which was decided on July 26, 1988— approximately two months before Virgil's trial—where the Fifth Circuit held "that a police officer cannot avail himself to a qualified immunity defense if he … deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles."  *Geter v. Fortenberry* (*Geter I*), 849 F.2d 1550, 1559 (5th Cir. 1988).[10]

Although the *Moldowan* Court primarily relied on three cases from the Fourth, Fifth, and Seventh Circuits to establish that police officers' duties under *Brady* were clearly established, the Eighth and Ninth Circuits had also extended *Brady* obligations to police officers prior to September 1988.  *See Walker v. Lockhart*, 763 F.2d 942, 958 (8th Cir. 1985) ("Police are treated as an arm of the prosecution for *Brady* purposes, "and the taint on the trial is no less if they, rather than the state's attorney, were guilty of the nondisclosure."); *see also United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978) (rejecting the government's argument that no *Brady* violation occurred because investigative agents, and not the prosecutor, were responsible for the nondisclosure).  Therefore, by September 1988, the Fourth, Fifth, Seventh, Eighth, and Ninth Circuits had all held that police officers had a duty to disclose exculpatory evidence under *Brady*.

---

clearly established during the relevant time period.  *Occupy Nashville*, 769 F.3d at 443 (quoting *Holzemer*, 621 F.3d at 527).

[10]     Applying that rule, the Fifth Circuit determined that Plaintiff's Complaint contained only conclusory assertions against Officer Kuhn, and lacked the necessary factual details, but like the district court, declined to dismiss Plaintiff's § 1983 claims against Officer Kuhn and permitted the Plaintiff to conduct discovery before the court ruled on the asserted immunity defenses.  *Geter I*, 849 F.2d at 1552, 1559.

Despite the *Moldowan* Court's characterization of its "recognition of this type of claim" as "more recent," and its reliance on other circuits' opinions, the Sixth Circuit recognized the existence of *Brady*-derived obligations for police officers as early as 1975. *Moldowan*, 578 F.3d at 378 (citing *Hilliard v. Williams*, 516 F.2d 1344, 1350 (6th Cir. 1975), *vacated in part*, *Williams v. Hilliard*, 424 U.S. 961 (1976)).  In *Hilliard*, the Sixth Circuit determined that the "acts and omissions" of Donn Clark—a police officer with the Tennessee Bureau of Criminal Investigation—resulted in the deprivation of the plaintiff's "due process and constitutional right to a fair trial under *Brady v. Maryland*" and "amounted to an actionable violation of 42 U.S.C. § 1983."  *Hilliard*, 516 F.2d at 1350.[11]

Given that law-enforcement officials had been operating within the bounds of *Brady* for twenty-five years and that several circuit courts, including the Sixth Circuit, had determined that police officers' withholding of exculpatory evidence violated criminal defendants' constitutional rights, the state of the law in September 1988—the time of Virgil's trial—gave Defendants "fair warning" that their alleged withholding of exculpatory evidence was unconstitutional.  *Hope*, 536 U.S. 730, 741.  Accordingly, the Individual Newport Defendants are not entitled to qualified immunity on Virgil's Fourteenth Amendment due-process claim.

### 2.  Count Two: Malicious Prosecution

"The Sixth Circuit 'recognizes a separate constitutionally cognizable claim of

---

[11]    Although the Sixth Circuit's decision was vacated by the Supreme Court, the case was remanded only for consideration of an intervening change in controlling law, which held that prosecutors are absolutely immune from liability for civil damages even though their acts and omissions may deprive plaintiffs of their constitutional rights to a fair trial.  *Hilliard*, 424 U.S. 961 (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)). Notably, the Supreme Court denied the petition for writ of certiorari by Donn Clark.  *Hilliard v. Clark*, 423 U.S. 1066 (1976).  On remand, the Sixth Circuit applied *Imbler* and found that the prosecutor was absolutely immune, but noted that the "judgment … as to Donn Clark will remain in full force and effect."  *Hilliard v. Williams*, 540 F.2d 220 (6th Cir. 1996).

malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove" four elements. *Id.* "First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'made, influenced, or participated in the decision to prosecute." *Id.* (internal citations omitted). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* "Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id.* at 308-09 (internal citations omitted). And "[f]ourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309.

The basis of Virgil's malicious-prosecution claim is that the Defendants caused his prosecution and his continued detention unlawfully by fabricating and withholding evidence, the absence of either or both of which would have dissolved probable cause. (Doc. # 52 at ¶¶ 116-125). At this time, only the City of Norwood and Officer Daniels have moved to dismiss Count Two.[12]

### i.     City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Daniels seek dismissal of Count Two, arguing

---

[12]     Although the City of Newport's Motion to Dismiss (Doc. # 70) seeks dismissal of all claims against it, the Court will address that motion in a separate and subsequent section, as Count Seven pleads a specific municipal-liability claim against the City of Newport. (Doc. # 52 at ¶¶ 150-154).

that Virgil has not sufficiently alleged a malicious-prosecution claim because "[t]here is no allegation that the Norwood Defendants had any involvement in the decision to prosecute Plaintiff or in the conduct of his trial." (Doc. # 67 at 12). In response, Virgil claims that "there is no question that Defendant Daniels influenced the decision to initiate charges against [him] through the misconduct that he committed with the other Defendant Officers in this case." (Doc. # 83 at 12). In support of that argument, Virgil points to the Second Amended Complaint's allegation that Officer Daniels was involved in the "joint investigation" and "withheld material exculpatory evidence from the prosecutors, the court, and the defense throughout the entire course of the prosecution." *Id.*

To state a claim against Officer Daniels, the Second Amended Complaint "must plausibly allege" that Officer Daniels "'made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308. "Under the first element, an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute, so long as the plaintiff can show that the officer 'influenced or participated in the decision to prosecute.'" *Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017) (quoting *Sykes*, 625 F.3d at 311-12). However, "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sykes*, 325 F.3d at 308 n.5. Put another way, the officer's "participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake," to satisfy the first element of a malicious-prosecution claim. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

The Second Amended Complaint fails to state a malicious-prosecution claim against Officer Daniels.  The Complaint alleges only that Officer Daniels was "in frequent contact with members" of the Newport Police Department, that he participated in a "joint investigation into the murder of Ms. Welch and other similar unsolved homicide[s] in the area," and that he failed to disclose the allegedly exculpatory evidence related to and derived from the joint investigation to the prosecutor.  (Doc. # 52 at ¶¶ 74-77).  At most, these allegations establish that Officer Daniels participated in the "joint investigation," not that Officer Daniels "influenced or participated" in the *prosecution*.  Even assuming, *arguendo*, that Officer Daniels's alleged participation in the "joint investigation" could be construed as participation in Virgil's prosecution, "absent [an] allegation of blameworthy conduct, such 'neutral' participation is insufficient to sustain a facially valid malicious-prosecution claim."[13]  *Johnson*, 790 F.3d at 656.  Accordingly, Virgil has failed to state a malicious-prosecution claim against Officer Daniels.

This defect in Virgil's Second Amended Complaint is also fatal to his claim against the City of Norwood.  After all, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer the fact that the [municipality] might have authorized [unconstitutional conduct] is quite beside the point."  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Because Virgil's Complaint fails to plausibly allege a Fourth Amendment malicious-prosecution claim against Officer Daniels, his claim against the City of Norwood must also fail.  Therefore, the City of Norwood and Officer Daniels's Motion to Dismiss (Doc. # 67) is **granted** with respect to Count Two.

---

[13]     Recall, unlike a Fourth Amendment malicious-prosecution claim, a Fourteenth Amendment *Brady* claim, requires no showing of blameworthiness.  *Brady*, 373 U.S. at 87.  And, Officer Daniels is not alleged to have fabricated evidence or conspired with other officers to frame Virgil.  *See infra*, pp. 21-22, 27-28.

### 3. Count Three: Fabrication of Evidence

"A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014). To state a fabrication-of-evidence claim, Virgil must plausibly allege that the Defendant knowingly fabricated evidence against him and that there is a reasonable likelihood that the false evidence could have affected the decision of the jury. *Gregory*, 444 F.3d at 737 (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)). At this time, only the City of Norwood and Officer Daniels have moved to dismiss Count Three.

### i. City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Daniels seek dismissal of Count Three, arguing that Virgil has not alleged facts that support a fabrication-of-evidence claim against Officer Daniels or the City of Norwood. (Doc. # 67 at 13). In his Response, Virgil concedes that the Complaint fails to sufficiently allege facts against the City of Norwood. (Doc. # 83 at 13 n.1) ("Plaintiff hereby moves to voluntarily dismiss his fabrication claim, as alleged in Count [Three] of his Second Amended Complaint, against the City of Norwood without prejudice."). The absence of allegations against Officer Daniels based on the fabrication evidence compels the same result for Virgil's claim against Officer Daniels. The Second Amended Complaint fails to plausibly allege a Fourth Amendment fabrication-of-evidence claim against Officer Daniels or the City of Norwood. Therefore, the City of Norwood and Officer Daniels's Motion to Dismiss (Doc. # 67) is **granted** with respect to Count Three.

### 4. Count Four: Supervisor Liability

The Individual Newport Defendants, specifically Defendant Sears and Defendant

Fromme, seek dismissal of Virgil's supervisor-liability claim.[14]  In support of their Motion, Defendants Sears and Fromme argue that police officers' duty to disclose exculpatory evidence was not clearly established as of September 1988, and therefore, the defendant-supervisors cannot be liable for failure to train their subordinates in that respect.  (Doc. # 75 at 10).  In response, Virgil claims that such a duty was clearly established as of September 1988.  (Doc. # 83 at 19-20).

As this Court has determined, a police officer's duty to disclose exculpatory evidence was clearly established before Virgil's trial in September 1988.  *See supra* pp. 15-18.  Nevertheless, Virgil's supervisor-liability claim against the Individual Newport Defendants must be dismissed for another reason.

Where a supervisor is also a policymaker, it may be easy to "improperly conflate[ ] a § 1983 claim of individual supervisor liability with one of municipal liability" or an official-capacity claim.  *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008).  The Second Amended Complaint and the parties' arguments exhibit this conflation and confusion.  But supervisor-liability and municipal-liability "claims turn on two different legal principles," and thus, require different factual allegations to state a plausible claim.  *Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

For personal liability against a supervisor, "liability must be based on more than *respondeat superior*."  *Phillips*, 534 F.3d at 543 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  "Nor can liability of supervisors be based solely on the right to control employees" or "simple awareness of employees' misconduct."  *McQueen v. Beecher*

---

[14]    The Second Amended Complaint also alleges a supervisor-liability claim against Defendant Ken Page.  However, Defendant Page is deceased and his Estate has not been served.  (Doc. # 75 at 10 n.1). Therefore, that claim is not properly before the Court.

*Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (internal citations omitted). Rather, "a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it.'" *Id.* (quoting *Shehee*, 199 F.3d at 300). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300. "A mere failure to act will not suffice to establish supervisory liability."[15] *Essex*, 518 F. App'x at 355 (citing *Gregory*, 444 F.3d at 751). Therefore, personal liability against a supervisor "under § 1983 must be based on active unconstitutional behavior." *Shehee*, 199 F.3d at 300.

In support of the supervisor-liability claim, Virgil alleges only that Defendant Sears and Defendant Fromme "failed to adequately train and supervise the Individual Newport Defendant Officers" with respect to constitutionally adequate law-enforcement practices, proper investigative procedures, the interviewing of suspects, and the production of exculpatory evidence. (Doc. # 52 at ¶¶ 132-137). Although Virgil claims that the supervisor-defendants' failure to train and supervise "encourag[ed] and/or permitt[ed]" the alleged constitutional violations, such indirect and passive conduct is insufficient. *Id.* at ¶ 134. There are no allegations that Defendant Sears or Defendant Fromme directly participated, encouraged, authorized, or knowingly acquiesced in the alleged fabrication of evidence or withholding of exculpatory evidence. Because the Second Amended Complaint alleges "only a failure to act, which alone is insufficient to support a

---

[15] In contrast to personal-capacity claims alleging failure to train or supervise, official-capacity or municipal-liability claims "do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act." *Essex*, 518 F. App'x at 355 (citing *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)).

supervisory-liability claim," Virgil has failed to state a claim upon which relief can be granted. *Essex*, 518 F. App'x at 357 (citing *Gregory*, 444 F.3d at 751). Therefore, the Individual Newport Defendants' Motion to Dismiss (Doc. # 75) is **granted** with respect to Virgil's § 1983 supervisor-liability claim against Defendant Sears and Defendant Fromme.

### 5. Count Five: Failure to Intervene

Although most failure-to-intervene claims involve allegations of excessive force, the Sixth Circuit has extended the failure-to-intervene theory of liability beyond the excessive-force context. *See Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973); *see also Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982); *Johnson v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001). Thus, a police officer can be liable under § 1983 when he or she fails to intervene and prevent constitutional violations. To plausibly state a failure-to-intervene claim, Virgil must show that the defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor. *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982). Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (citing *Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007)). At this time, only the City of Norwood and Officer Daniels have moved to dismiss Count Five.

### i.    City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Daniels seek dismissal of Count Five, arguing that the Second Amended Complaint fails to allege sufficient facts to state a failure-to-intervene claim against them.  (Doc. # 67 at 13).  Specifically, the Norwood Defendants claim that there are no factual allegations "from which to conclude that Defendant Daniels or anyone else from Defendant City of Norwood 'observed or had reason to know' that there was any misconduct occurring."  *Id.* at 13-14.  Virgil disagrees and argues that Officer Daniels "conducted a joint investigation with other Defendant Officers that resulted in the withholding of exculpatory evidence relating to alternate suspects," failed to "inform Plaintiff, his counsel or the prosecutors of the underlying misconduct that was being engaged in during the 'joint investigation,'" and failed to intervene and "stop the other Defendant Officers from framing" him.  (Doc. # 83 at 13-14).

A review of the Second Amended Complaint reveals that Virgil has failed to state a plausible failure-to-intervene claim against Officer Daniels and the City of Norwood. The Complaint alleges only that Officer Daniels was "in frequent contact with members" of the Newport Police Department, that he participated in a "joint investigation into the murder of Ms. Welch and other similar unsolved homicide[s] in the area," and that he failed to disclose the allegedly exculpatory evidence related to and derived from the joint investigation to the prosecutor.  (Doc. # 52 at ¶¶ 74-77).  There is no allegation that Officer Daniels observed or had reason to know that the "other Defendant Officers" had framed Virgil, that the "other Defendant Officers" had failed to disclose the allegedly exculpatory evidence developed during the "joint investigation," or that the "other Defendant Officers" had engaged in any unconstitutional behavior.  Thus, for Virgil's failure-to-intervene claim

to survive Rule 12(b)(6), the Court would be required to go beyond construing the Second Amended Complaint in Virgil's favor and instead, add allegations to the Complaint in his favor. The Court declines to do so. Accordingly, the City of Norwood and Officer Daniels's Motion to Dismiss (Doc. # 67) is **granted** with respect to Count Five.

### 6. *Count Six: Conspiracy*

"A civil conspiracy claim under § 1983 … lies when there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson*, 753 F.3d at 622 (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail on such a claim, Virgil must allege "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Revis*, 489 F.3d at 290).

"It is well-settled that conspiracy claims must be pled with some degree of specificity." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* However, "[p]laintiffs are not required to prove an express agreement among all the conspirators, and 'each conspirator need not have known all of the details of the illegal plan or all of the participants involved.'" *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). And "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire"; thus, "circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011).

### i. City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Steve Daniels seek dismissal of Count Six, arguing that the Second Amended Complaint does not contain a sufficient factual basis to state a conspiracy claim against either Officer Daniels or the City of Norwood. (Doc. # 67 at 8-11, 14). Virgil has conceded the inadequacy of his conspiracy claim against Officer Daniels. (Doc. # 83 at 21 n.4). The absence of any municipal-liability or official-capacity claim against the City of Norwood compels the same result for Virgil's conspiracy claim against the City. Therefore, the City of Norwood and Officer Daniels's Motion to Dismiss (Doc. # 67) is **granted** with respect to Count Six.

### ii. Individual Newport Defendants[16]

The Individual Newport Defendants seek dismissal of Count Six because it is "not pled with sufficient specificity." (Doc. # 75 at 10). Instead, the Individual Newport Defendants claim that Count Six "contains purely vague and conclusory allegations that mimic the elements of a civil conspiracy, without alleging any material facts that correspond to those elements." *Id.* at 11. In response, Virgil argues that the Second Amended Complaint satisfies the pleading standard, "especially given the fact that Defendants, not Plaintiff, are the ones with first-hand knowledge of the conspiracy." (Doc. # 83 at 21).

Virgil has sufficiently stated a § 1983 conspiracy claim against the Individual Newport Defendants. Although several of Virgil's allegations are conclusory and mimic the elements of a § 1983 conspiracy claim (Doc. # 52 at ¶¶ 144-149), they are supported

---

[16] The Court will address Defendant City of Newport's Motion to Dismiss (Doc. # 70) in a separate and subsequent section, as Count Seven pleads a specific municipal-liability claim against the City of Newport. (Doc. # 52 at ¶¶ 150-154).

by facts that allege that the Individual Newport Defendants fabricated evidence and withheld exculpatory evidence. *Id.* at ¶¶ 30-51. Specifically, the Second Amended Complaint alleges that the Individual Newport Defendants developed a plan to frame Virgil and committed several overt acts in support of their conspiratorial objective, including but not limited to, the manufacture of a fabricated statement and a "jailhouse snitch," the rehearsing of that fabricated statement with the "jailhouse snitch," and the offer of consideration for the fabricated statement. *Id.* Accordingly, the Second Amended Complaint states a § 1983 conspiracy claim against the Individual Newport Defendants with sufficient specificity, and the Individual Newport Defendants' Motion to Dismiss (Doc. # 75) is **denied** as to Count Six.

### 7. Count Seven: Municipal Liability

Count Seven of the Second Amended Complaint seeks to impose municipal liability against the City of Newport for "the failure to adequately train, supervise, and discipline officers on the requirements concerning the prompt disclosure of … evidence that exonerates a defendant following his arrest or conviction" and fabrication of evidence.[17] (Doc. # 52 at ¶¶ 151-154). The City of Newport has moved to dismiss Virgil's municipal-liability claim, arguing that the Second Amended Complaint contains insufficient factual allegations to establish that any constitutional violation Virgil suffered is attributable to a policy or custom of the City of Newport. (Doc. # 70 at 6).

Counties and municipalities "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "*Respondeat superior* or vicarious liability will not attach

---

[17] Count Eight of the Second Amended Complaint asserts an identical claim against the City of Cincinnati. (Doc. # 52 at ¶¶ 156-189).

under § 1983." *Id.* Therefore, a plaintiff raising a municipal-liability claim under § 1983 "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

The Second Amended Complaint appears to assert a *Monell* claim in two of the four abovementioned ways: the existence of a policy of inadequate training or supervision and the existence of a custom of tolerance or acquiescence of federal rights violations. (Doc. # 52 at ¶¶ 151-154). The Court will address each of these theories, and the sufficiency of the factual allegations in support thereof, in turn.

### a. Failure to Train

Beginning with the failure-to-train claim, the Supreme Court has held that "the inadequacy of … training may serve as the basis for § 1983 liability." *Harris*, 489 U.S. at 388. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City. v. Tuttle*,

471 U.S. 808, 822-23 (1985)).

To state a § 1983 failure-to-train claim upon which relief can be granted, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the untrained employees come into contact." *Id.* (citing *Harris*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citing *Harris*, 489 U.S. at 389).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted). However, "in a narrow range of circumstances" a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63 (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)). When "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for such training, the failure to train will result in § 1983 liability. *Harris*, 489 U.S. at 390.

In this case, Virgil has not alleged a pattern of constitutional violations. Instead, he has alleged that the City of Newport acted with deliberate indifference in failing to train its police officers regarding "prompt disclosure of … evidence that exonerates a defendant following his arrest or conviction" and fabrication of evidence. (Doc. # 52 at ¶¶ 151; 86-93). Virgil's allegations, taken as true, fall within the "narrow range of circumstances" that

the Supreme Court contemplated in *Harris*. *Connick*, 563 U.S. at 63, 70 (holding that failure to train prosecutors in their *Brady* obligations did not satisfy the single-incident liability theory, but noting that police officers are not "equipped with the tools to find, interpret, and apply legal principles," absent training).

In support of his claim, Virgil has put forth factual allegations detailing the Individual Newport Defendants' fabrication of inculpatory evidence and withholding of exculpatory evidence. Along with those allegations, Virgil claims that the City of Newport failed to train its officers on their duty to disclose exculpatory evidence and the impropriety of fabricating evidence. (Doc. # 52 at ¶¶ 86-93). "Given the known frequency with which police" obtain exculpatory evidence and their obligation to collect reliable evidence, the City of Newport's alleged failure to train constitutes deliberate indifference to the "highly predictable consequence" of the violations of criminal defendants' constitutional rights. *Connick*, 563 U.S. at 63 (quoting *Bryan Cty.*, 520 U.S. at 409). Moreover, Virgil has adequately alleged that the failure to train was the "moving force" behind the violation of his constitutional rights. *Burgess*, 735 F.3d at 479. Therefore, the Second Amended Complaint has sufficiently stated a § 1983 failure-to-train claim.

### b.     Failure to Supervise

Plaintiff's failure-to-supervise claim also survives dismissal. "Few published opinions thoroughly discuss the law on failure-to-supervise claims, especially as distinct from failure-to-train claims." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014). And the Sixth Circuit recently noted that the failure-to-supervise "theory of municipal liability is a rare one." *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). "Most agree that it exists and some allege they have seen it, but few actual specimens

have been proved." *Id.* "It appears to relate to two more common theories of municipal liability: an inadequate-training theory or an acquiescence theory." *Id.* "However characterized, [a failure-to-supervise claim] must meet the 'rigorous standards of culpability and causation' that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its 'facially lawful' policies." *Id.*

Therefore, "[s]imilar to the failure-to-train inquiry outlined above, to sustain a failure-to-supervise claim, the plaintiff 'must show that'" the City of Newport "acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the" constitutional violation. *Amerson*, 562 F. App'x at 492 (quoting *Mize*, 373 F. App'x at 500). For the same reasons as the failure-to-train claim, Virgil's allegation that the City of Newport failed to supervise police officers—who had the obligation to disclose exculpatory evidence and refrain from fabricating inculpatory evidence—constitutes an obvious deliberate indifference to the risk of constitutional violations, which was the "moving force" behind those constitutional violations. At this stage in the litigation, where the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," the Second Amended Complaint contains sufficient factual matter to state a § 1983 failure-to-supervise claim that is plausible on its face. *Wesley*, 779 F.3d at 428.

### c.    Custom of Tolerance

In addition to his failure-to-train and failure-to-supervise theories, Virgil also alleges that the City of Newport had an unwritten policy, practice, or custom of condoning the

withholding of exculpatory evidence and the fabrication of inculpatory evidence. (Doc. # 52 at ¶¶ 89-92). Specifically, Virgil claims that "[a]s a result of the municipal defendants' practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct; failing to investigate cases in which the police are implicated in obtaining wrongful charges and convictions; failing to discipline officers accused of this unlawful conduct; and facilitating a code of silence within the [Newport Police Department]," the Individual Newport Defendants "have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences." *Id.* at ¶ 90.

To plausibly state a municipal-liability claim based on "an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," the plaintiff must show: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's conduct was the 'moving factor' or direct causal link in the constitutional deprivation." *Thomas*, 398 F.3d at 429 (citing *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Virgil has failed to plausibly allege municipal liability against the City of Newport based on a custom-of-tolerance theory. The Second Amended Complaint is wholly devoid of any facts alleging prior instances of similar misconduct by any Newport police officers. Therefore, Virgil has failed to allege the existence of a clear and persistent pattern of illegal activity that could demonstrate that the City of Newport had notice or

constructive notice of constitutional violations. Moreover, this deficiency in the Second Amended Complaint is highlighted by the factual allegations in support of Count Eight—the municipal-liability claim against the City of Cincinnati—which specifically alleges several instances of similar unconstitutional conduct. (Doc. # 52 at ¶¶ 99-100). Therefore, the Second Amended Complaint states a plausible § 1983 municipal-liability claim against the City of Newport for failure to train and failure to supervise; however, it does not state a plausible claim based on a custom-of-tolerance theory. Accordingly, the City of Newport's Motion to Dismiss (Doc. # 70) is **denied** with respect to Count Seven.

### C. State-Law Claims

#### 1. *Count Nine: Negligent Supervision*

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Tansp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014). As for negligent supervision, "Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of negligent supervision." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). "[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Id.*

#### i. City of Norwood and Officer Steve Daniels

The City of Norwood and Officer Daniels seek dismissal of Count Nine, arguing that the Second Amended Complaint fails to state a claim against Officer Daniels, and therefore, "there is no basis to conclude that the training and supervision he received

resulted in injury to the Plaintiff."[18]  (Doc. # 67 at 15).  In response, Virgil claims that the Second Amended Complaint sufficiently alleges that Officer Daniels "withheld exculpatory evidence, failed to intervene when other officers committed misconduct, and engaged in a conspiracy with the other Defendants to frame" him, which supports a negligent-supervision claim against the City of Norwood.  (Doc. # 83 at 15).

Virgil has conceded his conspiracy claim and has failed to state a plausible failure-to-intervene claim—that leaves Officer Daniels's alleged withholding of exculpatory evidence as the only possible basis for a negligent-supervision claim against the City of Norwood.   The Second Amended Complaint, however, is entirely devoid of any allegations that the City of Norwood failed to properly train or supervise Officer Daniels regarding his *Brady* disclosure obligations.  In the absence of an allegation that the City of Norwood was negligent in its supervision or training of Officer Daniels and knew of the risk that such negligence posed, Virgil cannot maintain a plausible negligent-supervision claim against the City of Norwood.  Therefore, the City of Norwood and Officer Daniels's Motion to Dismiss (Doc. # 67) is **granted** with respect to Count Nine.

---

[18]     The Court recognizes the peculiarity of this analysis—the application of Kentucky substantive law to analyze a Kentucky resident's tort claim against an Ohio municipality.  There is nothing improper about the analysis, however.  The City of Norwood and Officer Daniels have not contested the Court's personal jurisdiction over them.  Nor are there any sovereign-immunity considerations to take into account.  *Mt. Healthy City Sch. Dist. Bd. of Edu. v. Doyle*, 429 U.S. 274, 280 (1977) (The Eleventh Amendment's sovereign immunity protects states and their instrumentalities from suit in federal court; however, it does not shield counties or municipalities).  And while the Full Faith and Credit Clause directs "that a State, when acting as the forum for litigation having multistate aspects or implications, respect the legitimate interests of other States and avoid infringement upon their sovereignty, the Clause does not "require the forum State to apply foreign law whenever another State has a valid interest in the litigation."  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 322-323 (1981) (citing *Nevada v. Hall*, 440 U.S. 410, 424 (1979)).

### ii.     City of Newport[19]

In its Motion to Dismiss, the City of Newport advances two arguments in support of dismissing Count Nine.  First, the City of Newport claims that Virgil has failed to "provide any facts on which to base" his negligent-supervision claim.  (Doc. # 70-2 at 8).  Second, the City of Newport argues that "[t]o the extent that [Virgil] asserts that Newport failed to enact policies," the Claims Against Local Governments Act "provides statutory immunity … for any claim arising from the exercise of discretion, including the 'failure to adopt any ordinance, resolution, order, regulation, or rule.'"  *Id.* (citing Ky. Rev. Stat. Ann. § 65.2003).  Both of these arguments are meritless.

First, the Court has previously concluded that Virgil has sufficiently alleged that the City of Newport failed to train and supervise its police officers.  Specifically, Virgil claims that the City of Newport failed to train its police officers regarding their duty to disclose exculpatory evidence and the impropriety of fabricating evidence.  (Doc. # 52 at ¶¶ 86-93).  Accepted as true, if the City of Newport failed to train its police officers in that respect, the City of Newport also knew or should have known the risk such failure created.  Therefore, Virgil has alleged sufficient facts to support a negligent-supervision claim against the City of Newport.

Furthermore, the Claims Against Local Governments Act provides no shield from Virgil's negligent-supervision claim.  Under Kentucky law, "[m]unicipal corporations are immune from tort liability only in very limited circumstances."  *Ashby v. City of Louisville*, 841 S.W.2d 184, 186 (Ky. Ct. App. 1992).  Specifically, "municipal immunity from liability

---

[19]     Virgil has also asserted a negligent-supervision claim against the Individual Newport Defendants, specifically Defendants Fromme, Page, and Sears.  (Doc. # 52 at ¶ 161).  However, at this time, the Individual Newport Defendants have not sought dismissal of Count Nine.

for 'ordinary torts' exists only in situations involving 'the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions.'" *Id.* (quoting *Haney v. City of Lexington*, 386 S.W.2d 738, 742 (1964)). The Claims Against Local Governments Act simply codifies "[t]his judicially recognized exception to the rule of municipal tort liability." *Id.* (citing Ky. Rev. Stat. Ann. § 65.2001). Put another way, the Claims Against Local Governments Act does not immunize every exercise of judgment or discretion by a city. And as other courts have found, the exercise of police functions is not a legislative, quasi-legislative, judicial, or quasi-judicial function. *See Day v. City of Henderson*, No. 2012-CA-2157-MR, 2014 WL 1882286, *4 (Ky. Ct. App. May 9. 2014); *see also Smith v. City of Corbin*, No. 11-cv-99-GFVT, 2013 WL 139726, *16 (E.D. Ky. Jan. 10, 2013); *Perkins v. City of Williamsburg*, No. 09-cv-170-GFVT, 2012 WL 12924562, *16 (E.D. Ky. Mar. 30, 2012). Therefore, the City of Newport's alleged failure to supervise and train police officers does not fall within the narrow exceptions to municipal liability set out in the Claims Against Local Governments Act. Accordingly, the City of Newport's Motion to Dismiss (Doc. # 70) is **denied** as to Count Nine.

### 2. *Count Ten: Intentional Infliction of Emotional Distress*

Under Kentucky law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See* Restatement (Second) of Torts § 46. Outrageous conduct 'is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984).

Kentucky courts often characterize intentional infliction of emotional distress as a "gap-filler" tort. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993). "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* Although intentional infliction of emotional distress can also be a "stand-alone tort under the right facts," the Kentucky Supreme Court has held that "there can be only one recovery on a given set of facts." *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012).

The City of Norwood and Steve Daniels, the City of Newport, and the Individual Newport Defendants all seek dismissal of Count Ten. (Doc. # 67 at 15; Doc. # 70-2 at 9; and Doc. # 75 at 12). Virgil makes no attempt to defend his intentional-infliction-of-emotional-distress claim. Accordingly, Count Ten of the Seconded Amended Complaint is dismissed and the City of Norwood and Officer Steve Daniels's, the City of Newport's, and the Individual Newport Defendants' Motions to Dismiss (Docs. # 67, 70, and 75) are **granted** with respect to Virgil's intentional-infliction-of-emotional-distress claim.

### 3. *Count Eleven: Respondeat Superior*

A "principal is vicariously liable for damages caused by torts of commission or omission of an agent … acting on behalf of and pursuant to the authority of the principal." *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). Therefore, "[u]nder certain conditions, an employer will be vicariously liable for the torts of its employees." *Booker*, 350 F.3d at 518 (citing *Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000)).

The City of Norwood and Officer Daniels seek dismissal of Count Eleven, arguing that Virgil "has not sufficiently alleged that Defendant Daniels committed any tort" and therefore, no basis for *respondeat superior* liability against the City of Norwood." (Doc. # 67 at 16). The City of Newport seeks dismissal of Count Eleven for the same reason. (Doc. # 70-2 at 9).

As explained above, counties and municipalities "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue"; "*[r]espondeat superior* or vicarious liability will not attach under § 1983." *Harris*, 489 U.S. at 385. Accordingly, for Virgil to state a *respondeat-superior* claim against either the City of Norwood or the City of Newport, he must have alleged a plausible state-law tort claim against an employee of those cities. *Jackson v. Steele*, No. 0:11-cv-72-DLB-EBA, 2014 WL 2801337, *13 (E.D. Ky. June 19, 2014) (citing *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005) ("Liability under a theory of *respondeat superior* can only exist when there is an underlying tort.").

Put simply, Virgil has failed to do so. Virgil's intentional-infliction-of-emotional-distress claim fails to state a claim upon which relief can be granted. And the only other state-law tort claim alleged—negligent supervision—does not support a *respondeat-superior* claim. Negligent supervision imposes direct liability for the employer's own negligence. *Respondeat superior* imposes vicarious liability on the employer for an employee's negligence. Although Kentucky law permits plaintiffs to simultaneously pursue claims against an employer for vicarious liability and direct liability, those claims and the theories underlying them are distinct. *Allgeier*, 433 S.W.3d at 335-36 (adopting the non-preemption rule, which "posits that an employer may be liable for injuries caused

both by its own independent negligence in hiring, training, retaining, and supervising an employee *and*, at the same time, under the doctrine of *respondeat superior* for the injuries caused by its employees' negligent behavior."). Because Virgil has failed to allege an underlying state-law tort against an employee of the City of Norwood or the City of Newport, he cannot maintain a plausible *respondeat-superior* claim against either city. Therefore, Count Eleven of the Second Amended Complaint is dismissed and the City of Norwood and Officer Steve Daniels's and the City of Newport's Motions to Dismiss (Docs. # 67 and 70) are **granted** with respect to Virgil's *responedat-superior* claim.

## III.   CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)   Defendants City of Norwood and Steve Daniels's Motion to Dismiss (Doc. # 67) is **GRANTED** as to **Count Two** (§ 1983 malicious prosecution), **Count Three** (§ 1983 fabrication of evidence), **Count Five** (§ 1983 failure to intervene), **Count Six** (§ 1983 conspiracy), **Count Nine** (negligent supervision), **Count Ten** (intentional infliction of emotional distress), and **Count Eleven** (respondeat superior), and **DENIED** as to **Count One** (§ 1983 due process);

(2)   Defendant City of Newport's Motion to Dismiss (Doc. # 70) is **GRANTED** as to **Count Ten** (intentional infliction of emotional distress) and **Count Eleven** (respondeat superior), and **DENIED** as to **Count Seven** (§ 1983 municipal liability) and **Count Nine** (negligent supervision);

(3)   Defendants Robert Bradford, Marc Brandt, Sarah Desentz, Tom Fromme, Pat Moore, Howard Niemeier, Rick Sears, and Norm Wagner's Motion to Dismiss (Doc.

# 75) is **GRANTED** as to **Count Four** (§ 1983 supervisor liability) and **Count Ten** (intentional infliction of emotional distress), and **DENIED** as to **Count One** (§ 1983 due process), **Count Six** (§ 1983 conspiracy).

This 9th day of January, 2018.



Signed By:
_David L. Bunning_
United States District Judge

K:\DATA\Opinions\Covington\2016\16-224 Virgil MTD MOO.docx