```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                   NORTHERN DIVISION at COVINGTON
                              - - -
3
     WILLIAM VIRGIL,                 : Docket No. 16-cv-224
4                                    :
                         Plaintiff,  : Covington, Kentucky
5                                    : Monday, April 12, 2021
                                     : 10:00 a.m.
6    versus                          :
                                     :
7    CITY OF NEWPORT,                :
     CITY OF CINCINNATI,             :
8    CITY OF NORWOOD,                :
     Newport Police Officers MARK    :
9    BRANDT, NORM WAGNER, PAT        :
     MOORE, HOWARD NIEMEIER, SARAH   :   VIA ELECTRONIC RECORDING
10   DESENTZ, SERGEANT BRADFORD,     :
     LT. COL. KEN PAGE, LT. TOM      :
11   FROMME, LT. RICK SEARS,         :
     Cincinnati Police Officers      :
12   MIKE SLAYBACK, ROBERT CARDONE,  :
     MIKE PHILLIPS,                  :
13   Norwood Police Officer STEVE    :
     DANIELS,                        :
14                                   :
                         Defendants. :
15
                              - - -
16            TRANSCRIPT OF DEPOSITION HEARING
                  BEFORE EDWARD B. ATKINS
17            UNITED STATES MAGISTRATE JUDGE
                              - - -
18
     APPEARANCES:
19
     For the Plaintiff:        ELLIOT SLOSAR, ESQ.
20                             Loevy & Loevy - IL
                               311 N. Aberdeen, Third Floor
21                             Chicago, IL 60607

22   For the City of Newport   JEFFREY C. MANDO, ESQ.
     Individual Police Officer JENNIFER HADDAD LANGEN, ESQ.
23   Defendants:               Adams Law, PLLC
                               40 W. Pike Street
24                             Covington, KY 41011

25   Appearances continued on page 2
```

Appearances continued on page 2

1    APPEARANCES: (continued)

2    For the Defendant,          MORGAN TODD OSTERLOH, ESQ.
     City of Newport:            Sturgill, Turner, Barker & Moloney
3                                333 W. Vine Street
                                 Suite 1500
4                                Lexington, KY 40507

5                                DANIEL R. BRAUN, ESQ.
                                 526 Greenup Street
6                                Covington, KY 41011

7    For the Defendants,         JACKLYN GONZALES MARTIN, ESQ.
     City of Cincinnati          Gerhardstein & Branch Co., L.P.A.
8    and Individual Cincinnati   432 Walnut Street
     Police Officers:            Suite 400
9                                Cincinnati, OH 45202

10   For the Defendants,         TIMOTHY ALAN GARRY, JR., ESQ.
     City of Norwood and         City of Norwood
11   Norwood Police Officer      4645 Montgomery Road,
     Steve Daniels:             Room 203
12                               Norwood, OH 45212

13   For the Witness,            TIMOTHY E. SCHNEIDER, ESQ.
     Joe Richard Womack:         Fessler, Schneider & Grimme
14                               20 N. Grand Avenue, Suite 8
                                 Ft. Thomas, KY 41075

15
     Transcriber:                LISA REED WIESMAN, RDR-CRR
16                               Official Court Reporter
                                 35 W. Fifth Street
17                               Covington, KY 41011
                                 (859) 291-4410

18

19

20

21

22

23

24
         Proceedings recorded by mechanical stenography,
25   transcript produced by computer.

1    (Proceedings commenced at 10:07 a.m.)

2         THE COURT:  Good morning.  Madam Clerk, would you

3    call the case, please.

4         COURTROOM DEPUTY:  Covington Civil 16-224.  William

5    Virgil vs. City of Newport, et al.

6         THE COURT:  Okay, good.  Thank you.  Let's see.

7    Counsel, for the record, would you state your appearances,

8    please?

9       Would you state your appearances, please?

10        MR. SLOSAR:  Sorry, Your Honor.  Yes.  Elliot Slosar

11   on behalf of the plaintiff, William Virgil.  Your Honor, and

12   it's my understanding that counsel of record are here but that

13   Mr. Womack and his counsel are not in the courtroom presently.

14        THE COURT:  Okay.  We'll take care of that.  Thank

15   you.

16        MR. SLOSAR:  Good morning, Your Honor.

17        THE COURT:  Morning.

18        MR. MANDO:  Good morning, Your Honor.  Jeff Mando and

19   Jennifer Langen on behalf of the individual Newport police

20   officer defendants.

21        THE COURT:  Okay.  Thank you.  Good morning.

22        MR. OSTERLOH:  Good morning, Your Honor.  Todd

23   Osterloh and city solicitor Daniel Braun on behalf of the City

24   of Newport.

25        THE COURT:  Okay.  Thank you.

1          MS. GONZALES MARTIN:  Good morning, Your Honor.

2     Jacklyn Gonzales Martin on behalf of the City of Cincinnati

3     and the Cincinnati individual defendants.

4          THE COURT:  All right.  Thank you.  Okay.  Can we

5     have Mr. Womack and Mr. --

6          MR. GARRY:  Good morning, Your Honor.

7          THE COURT:  I'm sorry.

8          MR. GARRY:  Tim Garry, Jr., on behalf of the City of

9     Norwood and Defendant Steve Daniels.

10          THE COURT:  Okay.  Thank you very much.

11          MR. GARRY:  Thank you, Your Honor.

12          THE COURT:  Can we have Mr. Womack and Mr. Schneider

13     brought in, please?

14        (Mr. Schneider entered the courtroom.)

15          MR. SCHNEIDER:  Good morning, Your Honor.

16          THE COURT:  Good morning.  Mr. Schneider, I assume?

17          MR. SCHNEIDER:  Yes, sir.

18          THE COURT:  Okay, good.  Come in.  Come on in.

19      We've gone on the record.  Counsel have stated their

20     appearances.  I didn't want to interrupt you and Mr. Womack in

21     your conversations, but I want to say a couple things before

22     we begin this morning.

23          MR. SCHNEIDER:  Yes, sir.

24          THE COURT:  You can have a seat if you like, sir.

25          MR. SCHNEIDER:  Yes, sir.

1          THE COURT:  Thank you.

2     (Mr. Womack was escorted into the courtroom.)

3          THE COURT:  All right, sir.  Are you Mr. Joe Richard

4     Womack?  I'm Judge Atkins here.  Mr. Womack, good morning to

5     you.

6          THE WITNESS:  Good morning.

7          THE COURT:  My name is Edward Atkins.  I'm a United

8     States magistrate judge, and I'm the judge who ordered that

9     you be brought here today for a discovery deposition.  So

10    before we begin, we've gone on the record.  All the attorneys

11    have stated their appearances.

12        I want to take a few minutes and talk to you about what

13    we're doing here today and what's going to occur here today.

14        I'm not here to punish you.  I'm not here to try to

15    intimidate or threaten you in any way, but I want to make sure

16    you understand why you're here and what's going on.

17        So as I said, I ordered that you be brought here for this

18    deposition.  Now, I'm familiar with the record in this case.

19    I've read a great deal of the record.  I know that there have

20    been some efforts to take your discovery deposition in this

21    case on one occasion.  Frankly, it didn't occur.

22        On another occasion, they tried to take your discovery

23    deposition, but things didn't go so well and so that's why

24    we're here today.

25        I read the transcript of that deposition.  I read all the

questions that were asked of you.  I read the objections that

the lawyers made.  I read the arguments that they've made.  I

read the objections that you stated, and I read the times and

the questions to which you asserted a Fifth Amendment

privilege against self-incrimination.

One thing that struck me, though, as I read that

deposition, and you actually mentioned it, you asked at one

point if you had the right to have an attorney present with

you.

I want you to know, Mr. Womack, in those past efforts to

depose you, in the room of lawyers that were there, no one was

there to look out for Joe Womack.  No one was there to put

your interests first, as you were the witness who was

testifying.  And I know that you were concerned about that

because you asked about your right to have an attorney

appointed.

So in order to answer that request, I've appointed

Mr. Schneider here to represent you and to be your attorney.

He is an attorney in this district, and he will be in the

nature of an attorney-client relationship with you.

A couple of things I want to tell you about

Mr. Schneider.  In the Eastern District of Kentucky here in

federal court, we have a panel of attorneys that are admitted

by court order, and the attorneys on the panel are authorized

by the Court to accept appointments to represent individuals

who are either charged with offenses, likely to be charged with offenses.  They may be targets of an investigation, they may be witnesses at trial, or they may be called as witnesses at a grand jury.

Now, the attorneys are authorized by the Court to represent these individuals.  Mr. Schneider and the other attorneys on this panel, they didn't just walk into federal court and say, you know, "Hey, I'd like to pick up a couple of criminal cases.  Can you give me one or two?"

No.  Mr. Schneider, like the other attorneys on the panel, have demonstrated to the Court their experience and their expertise in federal criminal law and federal criminal defense.

So it's based upon his qualifications and his experience that he's been admitted to this panel.  And as a result of that, I've appointed him to be your attorney in the case.

You're free to consult with him as much as you feel is necessary.  I would urge you to consult with him for any question that arises.  He will counsel you regarding any question that you think is inappropriate or if you think it's appropriate to assert the Fifth Amendment privilege against self-incrimination.

Now, I understand that Mr. Schneider -- you and Mr. Schneider may have had some conversations before coming in this morning.

1       Mr. Schneider, is that correct?

2               MR. SCHNEIDER:  That is accurate, Your Honor.

3               THE COURT:  All right.  And are you prepared, then,

4       to go forward on behalf of Mr. Womack today?

5               MR. SCHNEIDER:  Yes, sir.

6               THE COURT:  Okay.  Thank you, Mr. Schneider.

7           Now, the lawyers in the case, Mr. Womack, do have a right

8       to ask you some questions.  And unless Mr. Schneider objects

9       or instructs you not to answer or asserts a privilege on your

10      behalf, then I'm going to instruct that you answer those

11      questions.

12          Now, many of the questions that may be asked -- and I

13      could tell from your deposition, you may not understand why

14      they're relevant.  You may not feel like they're related to

15      the case.

16          But I want to tell you, just by way of example, from

17      reading your deposition, on page 31, Mr. Mando asked:  How

18      would you describe your skills at reading and writing?

19          Mr. Slosar objected, indicating a couple of objections,

20      but one stating that he believed that Mr. Mando was harassing

21      you.

22          That question, in my mind, is not intended -- or the

23      purpose of that question is not to harass you.  That question,

24      in my mind, and from what I know about this case, is a

25      question that is properly asked because it is likely to lead

1  to discoverable information and relevant information.

2      And here's why it's relevant.  In this case, Mr. Womack,

3  you signed a 12-page affidavit.  Now, that affidavit is the

4  basis for this lawsuit in many respects, and that affidavit is

5  not written in your hand.  It's written in the hand of

6  another.  It's, in fact, written in Mr. Slosar's hand.  So as

7  a result of that, it's relevant to know the extent of your

8  education.

9      Now, I could tell from reading your deposition,

10  Mr. Womack, you're not dumb.  You're very intelligent.  You

11  were very articulate.  But I think that you just lacked from

12  the ability to have an attorney to consult with you.  You

13  needed the ability to have someone you could rely on who could

14  advise you because that question is relevant, and it's likely

15  to lead to relevant information.

16      The lawyers, frankly, need to know, number one, could you

17  read the affidavit?  If you didn't -- couldn't read it, did

18  someone read it to you?  If it's not in your handwriting, why

19  is it not in your handwriting?

20      So this is just one example.

21      Another example, the lawyers are going to be allowed to

22  ask you about your criminal history and your criminal

23  background, and that's not harassing.  That's just a way of

24  learning information that may be relevant to the case.

25      Now, finally, one thing I want to say, Mr. Womack, is

1   that in -- let me find it in your deposition. On page 45 in

2   your deposition, Mr. Mando and the other lawyers are trying to

3   ask you these types of background questions --

4         (No audio from 10:18:01 a.m. to 10:18:23 a.m.)

5         THE COURT: -- to find out what he thinks you should

6   do or if he asserts -- unless he asserts a Fifth Amendment

7   privilege. But unless one of those things occurs, you should

8   answer the questions that are asked of you.

9      Now, I want to talk also about the mechanics of the

10   deposition today. I want to clarify for the record, as I know

11   from the deposition, that there was some dispute about this

12   previously, but this is a discovery deposition within the

13   meaning and spirit of the Federal Rules of Civil Procedure.

14      Who noticed the deposition? Mr. Mando, you noticed the

15   deposition?

16         MR. MANDO: I did.

17         THE COURT: You will begin by questioning first. The

18   remaining defendants will question in whatever order they

19   wish.

20      Mr. Slosar, you will follow the defendants.

21      Finally, Mr. Schneider, you will go last so that way, you

22   can clear up anything that comes up in Mr. Womack's testimony

23   that you feel needs to be addressed, okay?

24         MR. SCHNEIDER: Yes, sir.

25         THE COURT: All right. Again, Mr. Womack, you have

the right to consult with Mr. Schneider at any point.  If they

ask you a question and you feel like you need to talk to him,

just say, "I want to talk to my lawyer."  Mr. Schneider is

very experienced.  He'll know how to handle it.  He'll know

how to consult with you.

Do you understand, sir?

MR. WOMACK:  Yes, sir.

THE COURT:  Okay.  Thank you.  For purposes of the

deposition as well today, I note that the number and the

frequency of the objections at the last deposition became

somewhat of an obstruction.  So with the exception of any

objections that Mr. Schneider may raise, all objections will

be reserved, will not be stated on the record today.  Counsel

may file a written sheet within seven days of receipt of a

transcript to articulate any objections to the deposition

testimony today.

Again, that's with the exception of Mr. Schneider.

Mr. Schneider may assert any objections at any time that he

feels are appropriate.

We'll take one lunch break.  That will be up to an hour,

but no more.

And then, Mr. Womack, I'm going to make sure we have

lunch for you.  I want to make sure you don't have any dietary

restrictions, you're not allergic to anything.  If there's

anything we need to be aware of, I want make sure that we see

1    to that.  Is there anything that we should be considerate of?

2              MR. WOMACK:  No, sir, I don't (indiscernible).

3              THE COURT:  Okay.  You're not allergic or peanuts or

4    anything like that?

5              MR. WOMACK:  No, sir.

6              THE COURT:  Okay.  Thank you.

7         All right.  Okay.  That's everything I have, then.

8              MR. SLOSAR:  Judge --

9              THE COURT:  At this time --

10             MR. SLOSAR:  I apologize.  I didn't know if you were

11   going to give the attorneys an opportunity to ask a couple of

12   questions from the Court?

13             THE COURT:  Go ahead.

14             MR. SLOSAR:  Your Honor, I just want to preserve, for

15   the record, there has been a dispute in this case as to

16   whether there's a right to a trial deposition, and I

17   understood what Your Honor just said is that this is a

18   discovery deposition.

19        I understand that it's a deposition taken part of

20   discovery in this case, but plaintiff does just want to

21   reassert any objection.  We'll certainly litigate this as a

22   pretrial motion before Judge Bunning, but we would object to a

23   second deposition that would be considered a trial deposition.

24   I know there's a dispute between the defendants and plaintiff

25   on that.  I didn't understand Your Honor to be ruling on that

1    today.  I think you meant it differently.  But I just wanted

2    to put that on the record.

3         Secondarily, Judge, I understand Your Honor's ruling

4    regarding the no objections.  Frankly, that might be in

5    everybody's interest because it might speed this process along

6    quicker, more quickly.

7         But, certainly, one of the purposes of objections is to

8    give counsel an opportunity to formulate a question that isn't

9    compound.  I have no problem with no objections, but we will

10    be making form objections and the normal types of objections

11    we would make, especially if this deposition is going to be

12    used as trial testimony.

13         And so I just wanted to put that on the record, Your

14    Honor, but I appreciate the Court's rulings, and I just wanted

15    to make sure that I wasn't waiving anything by not --

16         THE COURT:  Okay.  Well, I contemplate that this

17    deposition may be used for any and all purposes as

18    contemplated by the Federal Rules of Civil Procedure.  But the

19    order of proceeding will be as I specified earlier.

20         Any response?

21         Okay.

22         MR. WOMACK:  Excuse me, Your Honor.  I have a

23    question.

24         THE COURT:  Yes, sir.

25         MR. WOMACK:  It seems like I got something --

1           MR. MANDO:  Your Honor, can we ask that Mr. Womack

2    speak into the microphone, please?  Because I cannot hear --

3           THE COURT:  It would help me, Mr. Womack, because,

4    you know, we've got masks on.  We've got shields.  It's hard

5    to hear.  So if you'd just speak into the microphone for me.

6           MR. SCHNEIDER:  Your Honor, if I could, I was just

7    getting ready to ask about this.

8       With regard to the subpoena that was issued, I do not

9    have a copy of it.  Mr. Womack has indicated that whatever

10   questions he decides to answer and how he answers them, he's

11   not prepared to do anything until he sees a copy of that.  So

12   I was going to ask if we could get a copy of that to him so he

13   could see it before we proceed.

14         THE COURT:  Mr. Mando?

15         MR. MANDO:  Your Honor, the only subpoena we issued

16   was the subpoena for the December 30, 2020 deposition.  With

17   the Court's writ, we did not feel a new subpoena was

18   warranted.  I think we could probably generate a copy of the

19   subpoena that was issued for the December 30 deposition.

20         MR. SCHNEIDER:  Your Honor, my client has asked that

21   I object to that.  He does not feel that that's properly

22   subpoenaed to these proceedings and feels that he's not being

23   compelled to testify.

24         THE COURT:  Okay.  Thank you very much.  I'm going to

25   overrule that objection.  There's no indication that the prior

subpoena was improperly served. We're here today by virtue of the order that I entered to have him brought here specifically for this purpose of the deposition.

So in my mind, to that extent, to the extent that there may be an issue regarding a new subpoena, I would interpret this as a continuation of that deposition previously. Okay?

Now, one final thing, Mr. Womack. I understand from looking at this case and from reading this case that you feel that you have a story that needs to be told, a truth that needs to be heard.

Failure to answer the questions today can result in some sanction, including, perhaps, potentially, but not limited to keeping that testimony or that story from being heard. So you should keep that in mind in deciding whether or not to answer questions today. Okay?

Anything else, counsel?

MR. MANDO: Your Honor, in terms of a lawyer asking Mr. Womack questions, does the Court prefer that the masks be kept on or, to assist in communication, can we -- can the lawyer asking the questions, especially with this distance, remove the mask?

THE COURT: You're sufficiently separated, in my mind, that you can remove your mask if you feel that you can do that in a safe fashion.

For instance, I'm more than 14 days out from the second

vaccination so I'm really wearing it as a, I think as an

abundance of caution.

    Mr. Slosar?

      MR. SLOSAR:  Judge, I expressed concerns about this

type of issue before.  I'll tell you, my wife was actually

hospitalized on Wednesday.  She doesn't have COVID.  We have

PCR tests but, like, there's a reason why I drove five hours

this morning instead of getting on a plane.  It's so that, you

know, when I go home to a 10-month-old who doesn't have a

vaccine, doesn't have the ability to have a vaccine, that I'm

not putting her life in jeopardy, and the same with my wife,

who is postpartum.

    So, Your Honor, this is your room.  We're, you know,

we're here at your order.  But this pandemic is real and, you

know, I would hope that if people have masks that they're

willing to wear them so that nobody is being put in jeopardy

intentionally or unintentionally.

    I know that I was researching transmission.  I'm halfway

through the vaccination process.  I've had one.  I haven't had

my second.  I get tested weekly.  But, you know, I'm just

going to make my concerns on the record.  I did an entire

murder trial that was two weeks in length with a mask in

September and October, and it didn't pose a problem for me.

      THE COURT:  Mr. Mando?

      MR. MANDO:  I certainly appreciate and sympathize

with Mr. Slosar's concern.  I would not want to do anything to jeopardize him or his family.  We are colleagues, even though we're on opposing sides of the bench.

But for the record, I have been fully vaccinated.  I have -- it's been more than three weeks since I've had my second dose.  I am committed to staying more than, I would say, 10 to 12 feet from Mr. Slosar, and we've got a divide here as well.  If I do ever get up, I will be certain to put my mask back on.

I would hope that that would be sufficient because I also want to, on my client's behalf, make sure that we're communicating adequately and accurately with Mr. Womack, and I don't want the mask to inhibit that.

THE COURT:  Well, I don't think Mr. Slosar is being unreasonable there so let's try to keep our masks on while we're engaged in the process.  There are a number of us in the room, and we all have various concerns.

I don't think it's unreasonable, okay?

MR. SCHNEIDER:  Your Honor, if I could, really just to kind of get to this issue right now, probably, rather than having you go out of the room, my client and I, we had extensive conversation.  He was very forthcoming with me, and I feel that the conversation gave me the type of information necessary to have it all come out.  He has made clear to me that he feels he's got a Fifth Amendment right to make no

communications.

I understand the Fifth Amendment and what advice (indiscernible audio), but he's absolutely asked me to convey to the Court and counsel that he intends to answer no questions today. He's going to invoke the Fifth Amendment on every question, essentially.

I thought I would bring that up to the Court.

THE COURT: Okay. Here's what I would tell you, Mr. Womack, as it relates to your Fifth Amendment right or the privilege against self-incrimination. This is not, in a civil case, a blanket manner in the law of allowing you to fail to answer questions.

Now, to the extent that a question may call for a response that is incriminating, then you may have a right to assert that, and Mr. Schneider can certainly do that. But if Mr. Mando says to you, Mr. Womack, "Mr. Womack, tell me about your educational background," that's not a question, on its face, that to me indicates that the Fifth Amendment applies.

So, again, the Fifth Amendment privilege is not a blanket assertion that protects you from all questioning in a civil case. It must be asserted when there is an issue about whether or not a question has been asked calling for an incriminating response. Otherwise, it's not an appropriate response.

So if you do -- if you do that; for instance, if

Mr. Mando asks you about your educational background and you

say, "I plead the Fifth," absent some showing that it's likely

to be incriminating, I'm going to direct that you answer that

question.

MR. WOMACK: I would like to save us all some time

right now.

THE COURT: I'm sorry, sir?

MR. WOMACK: I would like to save us all some time

right now. I'm not answering any questions. I'm pleading the

Fifth one time to all the questions asked, and then I'm going

to totally shut down.

I'm really concerned about the subpoena because I was

reading Civil Rule 45 about subpoenas and that one should have

been offered even after the 31st of December for this new

date, and not one was given. I didn't sign or receive one.

I know that Your Honor did send a writ to convey, but a

writ to convey is not a writ to testify.

THE COURT: Now, my name -- my order was a writ of

habeas corpus ad prosequendum, which is a writ to have a

person -- the body brought here for purposes of testimony.

MR. WOMACK: Well, I'm not going to testify, Your

Honor.

THE COURT: Okay. Let's make this clear for the

record. So if Mr. Mando asks you, Mr. Womack, what's your

name --

1      MR. WOMACK:  I invoke my Fifth Amendment right, sir.

2      THE COURT:  All right.  Let's go through a little bit

3  of the exercise, then.

4      Mr. Womack, I'm going to need to have you placed under

5  oath.  We do need to make a record of whatever occurs here

6  today.  I want to make sure that you do understand what's

7  going to happen here today.  All right, sir?

8      (Defendant was sworn by the courtroom deputy.)

9      THE COURT:  Mr. Womack, you've been placed under

10  oath.  All the responses that you give must be truthful.  You

11  are subject to the penalty of perjury for any false testimony.

12      Mr. Mando, you may ask.

13      MR. MANDO:  One procedural question, Your Honor.  At

14  your direction, I brought a court reporter here to the court.

15  I thought we were going to -- I was under the impression that

16  my court reporter that I brought here was going to record this

17  as well.

18      Do you want my court reporter to also take this down, or

19  is your record here sufficient?

20      THE COURT:  Well, I'm going to make the record for

21  me.  You did obtain the court reporter.  My hope is that we

22  can achieve some progress and adjourn, and then the court

23  reporter can continue.

24      But I think that -- I mean, if that does happen, you need

25  to have it all on one transcript.  So the court reporter can

go ahead and record.

MR. MANDO:  And then the videographer too?

THE COURT:  Same, same, um-hmm.

MR. MANDO:  All right.  And then for the record, I guess we should probably have my court reporter swear in Mr. Womack as well for the record.

THE COURT:  That's fine, yes.

MR. MANDO:  Sounds a little repetitious, but I just want to make sure it's reflected.

THE COURT:  Otherwise, it won't be on your record.

MR. MANDO:  Right.

(Deposition of Joe Richard Womack was conducted from 10:32 a.m. until 10:44 a.m.; transcript prepared by Barlow Reporting & Video Services.)

THE COURT:  Incidentally, I do want to express my thanks to the officials from the Ohio Department of Corrections.  That's you gentlemen; is that right?

CORRECTIONS OFFICER:  Yes.

THE COURT:  Thank you all for your service today.  I want to remark on how good everyone was to deal with at the correctional institute and you, gentlemen, for bringing Mr. Womack down here.  It's been very cooperative, very helpful, very professional.  Please pass my thanks on to everyone because I know there were more involved than the three of you as well, and it took a real effort to make this

1  happen, and I appreciate it.

2          CORRECTIONS OFFICER:  Thank you.

3          MR. SLOSAR:  Judge, can we stay on the record when

4  Mr. Womack and Mr. Schneider leave?  I just had something I

5  need to -- I want to express on the record.

6          THE COURT:  Well, if you want to discuss on the court

7  record, I'm going to stay in the court record.

8          MR. SLOSAR:  Yes, yes.  No, of course, Your Honor.

9          THE COURT:  Okay.  What is it?

10          MR. SLOSAR:  I prefer not to say in front of the

11  witness.

12          THE COURT:  Okay.  Well, we can -- he's not a party

13  to the case.  So Mr. -- or gentlemen, you can take Mr. Womack

14  back to the holding cell, please.

15          MR. SLOSAR:  Mr. Schneider can stay.  I just --

16          THE COURT:  Mr. Schneider will stay.

17       (Mr. Womack was escorted from the courtroom.)

18          THE COURT:  Okay.  Go ahead, Mr. Slosar.

19          MR. SLOSAR:  Your Honor, I appreciate all the

20  attention that this Court has given to this particular issue.

21  I know Your Honor's been overseeing this for maybe a year now,

22  but I have serious concerns about the Court explaining to

23  Mr. Womack an analogy where he's a co-defendant to the

24  plaintiff in this case.

25      Our allegations in this case is that Mr. Womack was

1   coerced into falsely testifying against somebody who spent

2   nearly 30 years wrongfully imprisoned.

3       And so when the Court is making decisions that are

4   coercive in nature -- potentially, I assume you may hold him

5   in contempt -- and you're explaining to him that he's

6   basically a co-conspirator of William Virgil, a co-defendant,

7   they're co-defendants, I represent one, Mr. Schneider

8   represent one, it gives me serious concerns about the

9   appearance of impartiality with what's going on here.

10      This is why I didn't want to say this in front of

11  Mr. Womack.  I'm not trying to embolden him.  I'm trying to

12  express to Your Honor that plaintiff is not aligned with Joe

13  Womack.  He is his own person, as Your Honor sees.

14      Inasmuch as Your Honor said on the record that my

15  objections were obstructionist, if you went a couple pages

16  back, you would have seen where the beginning of what I

17  perceived to be harassing began.  And I understand Your Honor

18  overruled it.  Judge Bunning found that it wasn't an abuse of

19  discretion and overruled my objection.

20      But this particular analogy, Your Honor, gives me serious

21  concern.

22      The plaintiff has never been aligned with Joe Womack.

23  The plaintiff spent nearly half of his life in prison because

24  of the testimony that Joe Womack originally gave in a

25  statement that the defendants got from him.  If anything, that

1   analogy could have been these defendant officers, not the

2   plaintiff.

3         I want to make that of record.  Your Honor is going to

4   make rulings.  I have concerns about some of the comments that

5   were made to Mr. Womack, and they do not reflect the actual

6   record in this case and the parties and how Mr. Womack fits

7   into that.

8               THE COURT:  Is there a motion somewhere in that,

9   Mr. Slosar?

10              MR. SLOSAR:  I'm happy to file one, Your Honor.

11              THE COURT:  I don't know what you're asking for.

12              MR. SLOSAR:  I'm expressing concerns that I think

13  that the role as represented to Mr. Womack wasn't accurate,

14  and I have concerns about the appearance of impartiality,

15  given the fact that the Court has explicitly stated on the

16  record that the plaintiff, William Virgil, in some world,

17  could be a co-defendant of Joe Womack's, where they have

18  aligned interests.  And that is not -- that is not this case,

19  Your Honor.

20              THE COURT:  The clear point of the illustration was

21  to indicate that if Mr. Womack were in the same situation,

22  either civilly or criminally, he'd have a right to

23  cross-examine a witness who testified against him.

24        Any response from the defense counsel?

25              MR. MANDO:  No, sir.

1          THE COURT:  Okay.  Anything further, then, at this

2     time?

3          MR. SCHNEIDER:  Your Honor, I think -- I just want to

4     make sure the Court knows and that it's clear for the record

5     that I have explained to my client where I think the Fifth

6     Amendment could be applicable, even though there would be

7     arguments of waiver based upon having already made statements.

8          I've talked to him about contempt issues and how that may

9     affect him.

10          I've talked to him about the fact that, as the Court had

11     indicated, there's a story potentially to be told here and

12     that justice is done when stories are told and juries get to

13     hear everything.  And that even if -- beyond the Fifth

14     Amendment right and beyond contempt issues, that there's the

15     possibility that he may be excluded from this entire story and

16     that I thought it was best that the story be out there so that

17     a jury could make their decision.

18          With all of that said, Mr. Womack has made his intentions

19     very clear to me.

20          THE COURT:  Okay.  Thank you, Mr. Schneider.

21          MR. SCHNEIDER:  Thank you, Judge.

22          THE COURT:  Anything else, then, before we adjourn?

23          MR. SLOSAR:  If Mr. Womack is going to take the

24     Fifth, I think -- and we'll await the Court's direction, but I

25     think plaintiff would have a right to ask Mr. Womack questions

that are on the Fifth. I think that those would be admissible at trial.

THE COURT: He's already -- he's indicated he's not going to answer any questions and that, to me, included you as well, Mr. Slosar.

MR. SLOSAR: It clearly did, Your Honor. I would agree as well, but it doesn't mean that plaintiff doesn't have a right to ask him questions.

Certainly, in a civil case, those questions and answers could be admissible, especially if he's taking the Fifth to all the parties.

THE COURT: Well, I'm curious how you take that position today at this time but at the same time argue that Mr. Mando shouldn't be allowed to ask questions because the other parties have asked questions.

MR. SLOSAR: Your Honor overruled that objection. I didn't -- I actually did not object to him asking any questions at all, Your Honor.

If you remember our briefing, I specifically said that certain topics had already been covered. We would object to duplicative questioning. We asked for temporal and topical limitations pursuant to the federal rules and what they allow. Your Honor --

THE COURT: So you're telling me that although you were able to ask Mr. Womack questions at the last deposition,

1   you would ask non-duplicative questions today?

2         MR. SLOSAR: Your Honor, what I'm saying is

3   completely different. I think we're talking about two

4   different issues.

5         If you're -- what I would assume would happen is if

6   Mr. Womack is refusing to answer questions that there will be

7   a motion to exclude his prior testimony. That motion would be

8   before Your Honor or Judge Bunning --

9         THE COURT: Well, it would be before Judge Bunning,

10   yeah.

11         (Indiscernible crosstalk.)

12         MR. SLOSAR: -- trial testimony, we would deal with

13   that.

14         If his prior deposition testimony is not admissible,

15   certainly somebody invoking the Fifth Amendment, that

16   testimony in a civil proceeding is admissible as long as there

17   are other pieces of evidence that would go to support it. You

18   would get a negative inference from that if you're a plaintiff

19   in a civil case, especially a 1983 case like this.

20         Plaintiff would have a right to ask Mr. Womack questions,

21   regardless of whether he's on the Fifth. I believe Your Honor

22   gave me that ability earlier this morning, when you said that

23   everybody on this side of the room could ask questions, then I

24   could, then his own counsel could.

25         I also assume the same would be true if he's going to be

1   invoking the Fifth all the way around; that everybody,

2   including the plaintiff, who brought this lawsuit and who

3   spent 28 years in prison, would have the right to question

4   somebody who's on the Fifth.

5       That's all I'm saying, Your Honor, for the record.  I

6   think we would have that right, and, you know --

7           THE COURT:  I agree.  We can have him brought back

8   in, and you can ask him your questions if you like.

9           MR. SLOSAR:  I'd like to have -- I'm fine with doing

10  a recess first, Your Honor.  I just -- I just want to make

11  these things -- these are critical decisions that are being

12  made in a case that's worth 20, 30, 40 million dollars.

13      And I think that I have a right, as a plaintiff, to make

14  a record, even if nobody in this room agrees with that, with

15  the points that I'm making.  But I think I still have a right

16  to make a record, and we'll see how Your Honor rules and how

17  Judge Bunning rules later.

18          THE COURT:  Well, we'll take a recess.  Mr. Schneider

19  can speak with him.  We can have him brought back in.  Each of

20  the defendants can take a turn asking questions, followed by

21  you, Mr. Schneider -- or, excuse me, Mr. Slosar, and then

22  Mr. Schneider if he wishes to.  And you can make your record.

23          MR. SLOSAR:  Thank you, Your Honor.

24          THE COURT:  All right.  Anything further?

25          MR. OSTERLOH:  Since we're all on the record, it's my

1  understanding from your prior ruling that because City of

2  Newport had an opportunity to ask questions that any

3  subsequent questions at this setting would be based on

4  Mr. Mando's follow-up so I don't anticipate us having

5  questions if Mr. Womack doesn't answer Mr. Mando's questions.

6  THE COURT:  Okay.  All right.  Good.  We'll take a

7  few minutes, then.  Thank you.

8  (Recess from 10:53 a.m. until 11:19 a.m.)

9  THE COURT:  All right.  We're back on the record in

10  the matter of William Virgil versus City of Newport, et al.

11  I'll note that counsel are present.  For the record,

12  Mr. Womack's present at table with Mr. Schneider as well.

13  Had to walk the steps coming back up so I'm catching up

14  here a little bit.

15  All right.  Any progress, Mr. Schneider?

16  MR. SCHNEIDER:  No, Your Honor.

17  THE COURT:  Okay.  I understand that, Mr. Womack, we

18  do need to go through a few things here.  So we've addressed

19  Mr. Mando's questions.  We're going to go through the other

20  parties and see if they have any luck asking you any questions

21  as well.  We'll sort of go through the same thing, I expect,

22  on behalf of the other defen -- Mr. Mando, any other

23  questions, then, at this time?

24  MR. MANDO:  In light of your rulings, Your Honor, I

25  do have -- for the record, I do have a number of other

substantive questions that I would be asking throughout the course of this deposition about Mr. Womack's background, about his criminal record. Standard things that would be pursued in a civil deposition.

I also have questions about the substance of his testimony, about his affidavit, about his other statements. A significant number of questions on different topics. But in light of Mr. Womack's refusal, in light of -- to answer my questions so far, in light of his assertion of the Fifth Amendment, in light of his testimony that he's not going to answer any of my questions, and in light of what Mr. Schneider has represented on the record, I'm prepared to go forward with the Court's rulings and pass the witness.

But just as long as the record reflects that I was prepared to go forward and, on behalf of my clients, to question Mr. Womack on those topics. But as I understand it, he's not going to answer my questions.

THE COURT: Okay. So, Mr. Womack, you heard everything Mr. Mando just said. Did he accurately reflect a what you intend to do today?

MR. WOMACK: Yes, he did.

THE COURT: Okay. I just, you know, in an abundance of caution too, I think for everyone's benefit, Mr. Womack, I just want to make sure you do understand that if you fail to comply with my orders directing you to answer questions in

1  this case today, sanctions could be imposed, including

2  potentially recommending in this case that your testimony be

3  stricken, which means your affidavit would not be considered,

4  your testimony in your prior deposition would not be

5  considered.  You would not be in the role as a witness in any

6  way in this case.

7      Now, do you understand that, sir?

8          MR. WOMACK:  Yes, sir.

9          THE COURT:  Okay.  All right.  And if I understand

10 correctly, no matter what Mr. Mando asks you -- he was going

11 to ask you questions about your affidavit.  He was going to

12 ask you questions about your criminal background or history.

13 He was going to ask you questions about potential time you

14 were together with Mr. Virgil in the case a number of years

15 ago.  Am I correct in understanding that you are intending to

16 refuse to answer any of his questions?

17         MR. WOMACK:  Yes, sir.

18         THE COURT:  Okay.  Is that sufficient, Mr. Mando?

19         MR. MANDO:  Yes, sir.

20         THE COURT:  All right.  Who would like to go next?

21    Mr. Osterloh?

22         MR. OSTERLOH:  Your Honor, on behalf of the City of

23 Newport, based on the representations here today, the lack of

24 responses, and the Court's prior order, we have no questions

25 at this time.

1          THE COURT:  Okay.  Yes, ma'am?

2          MS. GONZALES MARTIN:  Nothing for the City of

3     Cincinnati, Your Honor.

4          THE COURT:  Okay.

5          MR. GARRY:  Nothing for the City of Norwood, Your

6     Honor, in that we would have been asking questions as a result

7     of questions asked by other attorneys and the responses

8     received from the deponent.

9          THE COURT:  All right.  Okay.

10         MR. GARRY:  Thank you, Your Honor.

11         THE COURT:  Thank you.

12       Mr. Slosar?

13         MR. SLOSAR:  Your Honor, nothing on behalf of the

14    plaintiff.  I do wish to make a remark about the potential

15    sanctions.  I'd ask for a briefing schedule on this.

16         THE COURT:  Well, let me ask you this:  I was under

17    the impression you wished to make a record by virtue -- or in

18    a way of asking potential questions to Mr. Womack.

19         MR. SLOSAR:  Your Honor, my under -- I understand.  I

20    am not going to do that --

21         THE COURT:  Okay.

22         MR. SLOSAR:  -- given what I have seen.  I had a

23    chance to consult with my team over the break.  I would ask

24    the Court to set a briefing schedule relating to any potential

25    sanction outside of, you know, if the Court were to find him

1    in contempt. But if it gets into the exclusion of any

2    evidence in this case, I'd ask for a briefing schedule on

3    that.

4        There's been no motion before any party in this case to

5    exclude by written means. There hasn't been a motion for rule

6    to show cause either that's been before the Court. We're

7    purely here on a motion for a writ. The witness has invoked

8    the Fifth Amendment, and I'd ask for an opportunity to brief

9    this in writing, given the significance of any potential

10    sanction to the underlying litigation.

11          THE COURT: Okay. Well, Mr. Slosar, at this time,

12    there's been no order, as you said. There's been no motion

13    even filed. I don't see the point in setting a briefing

14    schedule until something is in the record, either by way of a

15    motion or recommended disposition on a motion.

16          MR. SLOSAR: Sure. I appreciate that, Your Honor. I

17    just -- I didn't know if Your Honor was ready to make such a

18    ruling without a motion. I just wanted to inform the Court

19    that we'd like to be a part of that briefing process.

20          THE COURT: I can tell you, Mr. Slosar, any

21    recommendation I would make on a motion, whether oral or

22    written, would come in the form of a written pleading, and you

23    would have an opportunity to object in accordance with the

24    rules under a briefing schedule that's set out in those rules.

25          MR. SLOSAR: Thank you, Your Honor.

1        THE COURT: But you have no questions for Mr. Womack?

2        MR. SLOSAR: No, Your Honor, I do not.

3        THE COURT: Okay. Mr. Schneider, any questions for

4 Mr. Womack?

5        MR. SCHNEIDER: No, Your Honor. Thank you.

6        THE COURT: Is there anything further, counsel, in

7 your views that we should try to do today?

8        MR. MANDO: Your Honor, may I have just a minute with

9 defense counsel just to see if there are --

10       THE COURT: Sure. You all can -- we can go off the

11 record for a moment --

12    (Indiscernible crosstalk.)

13       THE COURT: I'm sorry.

14       MR. MANDO: I just need a couple of minutes, Your

15 Honor.

16       THE COURT: That's fine. We'll just remain in Court,

17 though, but you all can consult if you like.

18       MR. MANDO: Thank you.

19    (Counsel exited the courtroom at 11:25 a.m.)

20       MR. WOMACK: Hey, Judge Atkins?

21       THE COURT: Yes, sir.

22       MR. WOMACK: Who appointed you? What president

23 appointed you?

24       THE COURT: I'm not appointed by a president. I'm

25 appointed by the judges in the Eastern District of Kentucky.

1     MR. WOMACK:  Because I know most federal judges are

2  appointed by presidents.

3     THE COURT:  Those are U.S. District judges and

4  Circuit judges and Supreme Court justices.

5     MR. WOMACK:  Oh, okay.

6   (Counsel returned the courtroom at 11:28 a.m.)

7     THE COURT:  All right.  Madam Clerk, let's go back on

8  the record in the matter of William Vigil versus City of

9  Newport.  We'll note counsel have returned to the courtroom.

10  Mr. Womack is still present with Mr. Schneider as well.

11    Mr. Mando?

12    MR. MANDO:  Nothing further on behalf of the Newport

13  police officer defendants, Your Honor.

14    THE COURT:  Okay.

15    MR. MANDO:  In light of today's events.

16    MR. OSTERLOH:  Nothing further from the City of

17  Newport.

18    THE COURT:  Thank you.

19    MS. GONZALES MARTIN:  Nothing further.

20    THE COURT:  Thank you.

21    MR. GARRY:  Nothing further for the City of Norwood

22  or Defendant Daniels.

23    THE COURT:  All right.  Thank you.

24    Mr. Slosar, anything further?

25    MR. SLOSAR:  Nothing, Judge.  Thank you for your

time.

THE COURT: Thank you.

Mr. Schneider, anything?

MR. SCHNEIDER: Regarding the deposition, nothing, Your Honor. Thank you.

THE COURT: Okay. For purposes of the case, Mr. Schneider, I want you to continue in your appointment at this time for Mr. Womack.

Mr. Womack, I'm still concerned about you and your rights. I want you to continue to have the assistance of an attorney in the case as it relates to your testimony or potential testimony in the case so I want Mr. Schneider to continue as your attorney, if that's all right with you.

MR. WOMACK: That's okay.

THE COURT: That's okay, sir?

MR. WOMACK: Yes, sir.

THE COURT: Okay. So he'll continue as your attorney. He acts in that role, and you are in an attorney-client relationship with him, which means you may consult with him freely, and everything you tell him is subject to that attorney-client privilege.

Do you understand, sir?

MR. WOMACK: Yes, sir.

THE COURT: Any further questions today, Mr. Womack, before we adjourn?

1     MR. WOMACK:  No, sir.

2     THE COURT:  Thank you all very much, then.

3  Gentlemen, you can return Mr. Womack.  Thank you very

4  much.

5     We'll be in recess.

6     (Proceedings concluded at 11:29 a.m.)

7                              - - -

8                  C E R T I F I C A T E

9     I, LISA REED WIESMAN RDR-CRR, certify that the
   foregoing is a correct transcript from the electronic
10 recording proceedings in the above-entitled matter,
   transcribed to the best of my ability to hear and understand
11 said recording.

12

13 _\s\ Lisa Reed Wiesman_              April 16, 2021
   LISA REED WIESMAN, RDR-CRR          Date of Certification
14 Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25