**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 16-224-DLB-EBA**

**WILLIAM VIRGIL**                                                    **PLAINTIFF**

**v.**                        **MEMORANDUM ORDER**

**CITY OF NEWPORT, et al.**                            **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon three motions—two filed by Plaintiff William Virgil and one filed by Defendant City of Newport. (Docs. # 297, 300, and 301). On June 24, 2021, the Court issued a Memorandum Opinion and Order that granted summary judgment in part for the Newport Police Officer Defendants (hereinafter "Individual Newport Defendants"), denied summary judgment in relevant part for the City of Newport, and granted summary judgment for the Cities of Cincinnati and Norwood and their individual officers. (Doc. # 293). Plaintiff has moved for reconsideration of the Court's Order with respect to the grant of summary judgment for the Individual Newport Defendants, (Doc. # 297), and has also moved to certify as frivolous the Individual Newport Defendants' interlocutory appeal of the portion of the Order denying qualified immunity, (Doc. # 300). The City of Newport has moved to stay the upcoming trial until the resolution of the Individual Newport Defendants' interlocutory appeal. (Doc. # 301). For the reasons set forth below, Plaintiff's Motions (Docs. # 297 and 300) are **denied** and the City of Newport's Motion (Doc. # 301) is **granted**. In addition, Plaintiff and the City of

Newport shall have ten (10) days to move to certify the summary judgment Order for interlocutory appeal.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural background of this case is set forth in substantial detail in the Court's prior Memorandum Opinion and Order, (*see* Doc. # 293), and will be briefly summarized here.  In September 1988, William Virgil was tried and convicted of murdering 54-year-old Retha Welch in Newport, Kentucky.  (Doc. # 212-3 at 1399).  That conviction was vacated in 2015 following the discovery of DNA evidence favorable to Virgil, and Virgil was released from prison.  (Doc. # 234-46).  Shortly thereafter, a key prosecution witness by the name of Joe Womack recanted the testimony he had provided at Virgil's grand jury and trial.  (Doc. # 234-8).  Womack had testified that Virgil confessed to committing the murder while the two were incarcerated together.  In addition to recanting his testimony, Womack alleged that his testimony was coerced and fabricated by Newport police officers.  (*Id.*).  Womack repeated these allegations before the state grand jury in 2016, which declined to reindict Virgil.  (Docs. # 236-2 at 29-70 and 234-15 at 130).

Following his release from prison, Virgil brought this civil action under 42 U.S.C. § 1983.  (Doc. # 49-1).  As relevant here, Virgil alleges that certain Newport Police Officers, including Norman Wagner, Rick Sears, and Marc Brandt, violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence regarding alternate suspects, fabricated testimony, and pretrial payments to a prosecution witness.  (*Id.*).  The Individual Newport Defendants filed a Motion to Dismiss on the basis of qualified immunity, (Doc. # 75), which was denied, (Doc. # 97).  That ruling

2

was affirmed by the Sixth Circuit Court of Appeals. *Virgil v. City of Newport*, 745 F. App'x 618 (6th Cir. 2018).

At summary judgment, the Court granted qualified immunity to the Individual Newport Defendants on three of Plaintiff's five *Brady* theories, while denying qualified immunity for Officers Brandt and Wagner on the remaining two theories. (Doc. # 293 at 78-79). The Court then issued a Pretrial Order setting dates for a pretrial conference and jury trial, as well as deadlines for the filing of motions in limine. (Doc. # 294). The Court later granted Plaintiff and the Individual Newport Defendants' joint motion to extend the deadlines in the Pretrial Order by two weeks to allow for time to conduct a mediation. (Doc. # 296). In the meantime, Plaintiff filed a Motion for Reconsideration, arguing that the Court clearly erred in granting summary judgment on two of Plaintiff's *Brady* claims. (Doc. # 297). After the mediation failed to result in a settlement, the Individual Newport Defendants appealed the Court's denial of qualified immunity on Plaintiff's two surviving *Brady* claims. (Doc. # 298). Plaintiff then submitted a Motion to Certify the Appeal as Frivolous, arguing that the appeal was taken solely in an attempt to delay the start of trial. (Doc. # 300). Finally, the City of Newport entered the fray when it filed a Motion to Stay requesting that the Court stay the trial pending the outcome of the appeal by the Individual Newport Defendants. (Doc. # 301). Plaintiff has since responded in opposition to the City of Newport's Motion, (Doc. # 311), and the City of Newport has replied, (Doc. # 343). In addition, the Individual Newport Defendants have responded in opposition to Plaintiff's Motion for Reconsideration. (Doc. # 344). The motions are now ripe for review.

## II. ANALYSIS

### A. Plaintiff's Motion for Reconsideration (Doc. # 297)

Plaintiff's Motion for Reconsideration will be denied because Plaintiff has failed to make the requisite showing of clear error or manifest injustice.[1] *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Plaintiff first argues that the Court clearly erred in granting summary judgment on his claim that Defendant Sears withheld the internal affairs investigative file on alternate suspect Isaac Grubbs. (Doc. # 297 at 3). The file was prepared in the aftermath of Grubbs' death at the hands of police and contained Grubbs' criminal history and mental health records. (Doc. # 236-4 at 47-50). The Court held that the Grubbs evidence was not suppressed because the record demonstrated that Virgil's criminal defense attorney, Robert Patton, had access to the file in advance of trial. (Doc. # 293 at 17). In particular, the Individual Newport Defendants produced evidence showing that Patton had subpoenaed the file and that the state trial court had ordered the prosecutor to make the file available. (*Id.* at 18). The state court's order instructed that "both parties shall meet with the City Solicitor or representative to examine the file to determine whether or not the file contains exculpatory evidence." (Doc. # 212-70 at 2).

---

[1] The Court has jurisdiction to hear Plaintiff's Motion for Reconsideration notwithstanding the Individual Newport Defendants' filing of a Notice of Appeal. Although the filing of a notice of appeal "is an event of jurisdictional significance," it merely divests the district court of control over "those aspects of the case *involved in the appeal*." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (emphasis added). Plaintiff's Motion for Reconsideration raises matters unrelated to the issues on appeal. In these situations, the Sixth Circuit has held that "an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case." *Williamson v. Recovery Ltd. P'Ship*, 731 F.3d 608, 626 (6th Cir. 2013) (quoting *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1528-29 (6th Cir. 1992)).

Plaintiff now maintains, for the first time, that there were actually two files relating to the Grubbs killing, a criminal investigative file and an internal affairs investigative file, with only the latter file containing the desired exculpatory information. (Doc. # 297 at 3-4). According to Plaintiff, the state court's order was ambiguous as to which file the prosecutor was required to disclose. (*Id.* at 6). Thus, Plaintiff asserts that the Court erroneously drew an inference in Defendants' favor when it assumed "that the Grubbs [internal affairs] investigative file—not just the Grubbs criminal investigative file—was available to Mr. Patton." (*Id.* at 8).

The first problem with this argument is that it was not raised in Plaintiff's summary judgment response brief. Despite Defendants' insistence in their opening brief that the state court had ordered the release of the Grubbs evidence, (Doc. # 212 at 50), Plaintiff made no suggestion that the file that was ordered released may have been the wrong one. Instead, Plaintiff argued that the Commonwealth had failed to comply with the state court order, as evidenced by Patton's failure to recall ever meeting with the prosecutor to review the file at the City Solicitor's office. (Doc. # 234 at 106). A motion for reconsideration does not provide parties an opportunity to raise new arguments that could have been raised earlier. *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012). The Sixth Circuit has accordingly held that arguments presented for the first time in a motion for reconsideration are forfeited on appeal. *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012).

In addition to being procedurally improper, Plaintiff's newly raised argument lacks merit. Viewed in context, the state court's order that "both parties shall meet with the City Solicitor or representative to examine the file" is clearly referring to the internal affairs file

5

and not the criminal investigative file. In Patton's motion, he specifically requested that the court "order the Newport Police Department to open its sealed *internal investigation file* on the shooting by the Newport City Police of Issac [sic] Grubbs on the night of April 11, 1987." (Doc. # 196-24) (emphasis added). The prosecutor likely would have known which file the state court was referring to, as contemporaneous documents indicate that Newport officers themselves drew a distinction between the "internal affairs investigation" and the "criminal investigation" into the Grubbs shooting. (*See* Doc. # 236-4 at 2). Accordingly, the Court did not err, much less clearly err, in concluding that the internal affairs investigative file was available to Patton and thus was not suppressed in violation of *Brady*.

The Court, furthermore, did not clearly err in granting summary judgment for Defendant Wagner on Plaintiff's claim that Wagner fabricated and coerced the testimony of witness Joe Womack. Much of the evidence supporting this claim came from Womack himself, who has provided sworn statements detailing alleged fabrication and coercion by Defendant Wagner in the runup to Virgil's grand jury and trial. (Doc. # 234-8). Yet, on three separate occasions during the discovery period, Womack either refused to answer questions from the attorney for the Individual Newport Defendants or refused to testify at all. (*See* Doc. # 293 at 12-14). Moreover, Womack indicated that he would likely continue resisting cross examination were he to testify at trial. (*See id.* at 13-14). Because Womack would likely be unavailable to testify fully at trial, the Court granted the Individual Newport Defendants' motion to strike Womack's pretrial sworn statements as inadmissible hearsay. (*Id.* at 34). The Court rejected Plaintiff's argument that Womack's statements were admissible under the hearsay exception for "statements against interest"

6

in Federal Rule of Evidence 804(b).  (*Id.* at 25-31).  Although Plaintiff asserted generally that Womack's recanting statements conflicted with earlier sworn statements at Virgil's trial and thus subjected him to charges of perjury, Plaintiff failed—both in his brief and at oral argument—to explain how any of these statements in particular would be admissible under Rule 804(b).  (*Id.* at 25-27).  As the Court noted, this is inadequate under Sixth Circuit caselaw, which requires that the proponent of the evidence demonstrate the admissibility of each individual statement under Rule 804(b).  (*Id.* at 26) (citing *United States v. Cox*, 871 F.3d 479, 490 (6th Cir. 2017)).

Plaintiff now attempts to conduct the sentence-by-sentence analysis that he should have done earlier.  In his Motion for Reconsideration, Plaintiff compares specific statements from Womack's 1988 trial testimony with arguably conflicting statements from his 2016 grand jury testimony to argue that Womack exposed himself to liability for perjury.  (Doc. # 297 at 11-15).  However, the Court need not decide whether the statements Virgil highlights are self-inculpatory and whether they implicate Defendant Wagner, because Plaintiff's argument comes too late.  As mentioned, a motion for reconsideration is not an opportunity for a second bite at the apple, *Shah*, 507 F. App'x at 495, and that is precisely what Plaintiff seeks here.  Plaintiff had the opportunity in advance of the Court's summary judgment ruling to comb through the 1988 trial transcript, as he has now, to argue that Womack's recanting statements qualify as statements against interest under Rule 804(b).  Yet, neither in his brief nor during oral argument did Plaintiff point to any specific statements from Womack's 1987 or 1988 testimony that conflicted with his later statements implicating Defendant Wagner.  (Doc. # 293 at 25-27).  Furthermore, it was not the Court's role to search through Womack's testimony itself.

7

"[J]udges are not like pigs, hunting for truffles that might be buried in the record."  *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1163 (6th Cir. 2021) (internal quotation marks omitted).

Plaintiff contends that because the Individual Newport Defendants waited until their summary judgment reply brief to raise evidentiary objections, "Plaintiff should not be penalized for failing to identify the precise admissible statements against interest from Womack's 2016 grand jury testimony in his summary judgment Response."  (Doc. # 297 at 10).  Plaintiff is correct that Defendants raised these evidentiary objections for the first time in their summary judgment reply brief, but Plaintiff fails to explain why he neglected to identify any of Womack's purportedly admissible statements in response to Defendant's Motion to Strike.  As Plaintiff concedes, the Motion to Strike came after the completion of summary judgment briefing and squarely addressed the admissibility of Womack's pretrial statements in light of Womack's recalcitrance.  (*Id.*).

Finally, Plaintiff asserts that the Court's Order granting summary judgment "never consider[ed] the circumstantial evidence supporting Plaintiff's fabrication claim."  (*Id.* at 15).  However, the circumstantial evidence Plaintiff points to, including evidence that Womack lied about sharing the same cell as Virgil, the changes in Womack's story over time, Wagner's undisclosed payment and promises of consideration to Womack, and the assistance provided to Womack in reducing his state-court sentence, simply does not create a genuine issue of material fact that Wagner coerced and/or fabricated Womack's testimony.  Thus, without Womack's statements, Plaintiff's fabrication claim fails.

For these reasons, the Court will not revisit its prior rulings excluding Womack's recanting statements and granting summary judgment in Defendant Wagner's favor on

8

Plaintiff's fabrication and coercion claims. As none of Plaintiff's arguments warrant reconsideration of the Court's summary judgment Order, Plaintiff's Motion for Reconsideration is **denied**.

### B. Plaintiff's Motion to Certify Appeal as Frivolous (Doc. # 300)

The Individual Newport Defendants' interlocutory appeal is not frivolous, and thus Plaintiff's Motion to Certify the Appeal as Frivolous will be denied. There is no per se rule against filing multiple interlocutory appeals of denials of qualified immunity, as Defendants have done here. *Behrens v. Pelletier*, 516 U.S. 299, 306-07 (1996). However, the Supreme Court in *Behrens* noted that district courts have the authority to certify interlocutory appeals as "frivolous" in order to allow proceedings to continue. *See id.* at 310; *McCloud v. Testa*, 97 F.3d 1536, 1560 (6th Cir. 1996). District courts within the Sixth Circuit have previously exercised this authority. *See, e.g.*, *Boyer v. Petersen*, No. 1:15-cv-888, 2016 WL 10520928, at *1 (W.D. Mich. Dec. 14, 2016); *Robinson v. Barrow*, No. 1:11-cv-01609, 2012 WL 1004738, at *2 (N.D. Ohio Mar. 22, 2012).

Plaintiff argues that the Sixth Circuit's affirmance of this Court's denial of qualified immunity at the pleading stage eliminates any possible avenues of success for Defendants in a second appeal at the summary judgment stage. This is because, according to Plaintiff, "[t]he summary judgment facts mirror the Second Amended Complaint's allegations," and the only remaining pure question of law—whether police officers had a clearly-established obligation to disclose *Brady* material in 1988—has already been resolved and is the law of the case. (*Id.* at 9-10). Relying on *Johnson v. Jones*, 515 U.S. 304, 313 (1995), Plaintiff argues that because the district court based its

9

decision on disputed facts, the court of appeals would lack jurisdiction to decide Defendants' appeal. (Doc. # 300 at 9).

Plaintiff's argument overlooks undisputed facts uncovered during discovery that were not alleged at the motion to dismiss stage and which gave rise to new legal questions at summary judgment. For example, it became apparent at summary judgment that defense attorney Patton learned of information about the serial killer investigation undertaken by Newport, Cincinnati, and Norwood police officers and questioned Officer Brandt about the serial killer investigation at Virgil's trial. (*See* Doc. # 293 at 43-44, 50-51). These facts in turn raised non-frivolous legal questions as to whether the information about alternate suspects identified in the serial killer investigation was suppressed and whether the information was material. (*See id.* at 46-52). As another example, the Individual Newport Defendants argued in their summary judgment brief that the evidence of a pretrial payment to Joe Womack was not required to be disclosed because the payment was not made in exchange for the witness's testimony. (Docs. # 212 at 63 and 293 at 35-37). Although this argument was rejected at summary judgment, it is not frivolous, and it was not addressed in the Court's Opinion at the pleading stage.

Furthermore, contrary to Plaintiff's contention, the circumstances surrounding the Individual Newport Defendants' appeal do not indicate that it was taken solely to delay proceedings. The Individual Newport Defendants appealed promptly after the conclusion of the parties' scheduled mediation on July 12, 2021, and over five weeks prior to the start of trial. (Doc. # 298). By contrast, in *McDonald v. Flake*, the Sixth Circuit held that the officer defendant's interlocutory appeal was for purposes of delay when it was shown to

10

be "clearly futile" and was filed "only days before trial was scheduled to begin." 814 F.3d 804, 817 (6th Cir. 2016).

As the Individual Newport Defendants' appeal is neither frivolous nor sought solely to delay trial, Plaintiff's Motion to Certify Appeal as Frivolous is **denied**.

**C.     Defendant City of Newport's Motion to Stay Trial (Doc. # 301)**

The trial scheduled for August 23, 2021 will be stayed pending appeal by the Individual Newport Defendants.  As an initial matter, it is questionable whether the Court would have jurisdiction to conduct a trial against the City of Newport while the case against the Individual Newport Defendants is pending on appeal.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  The municipal liability claim against the City of Newport depends in large part upon whether the Individual Newport Defendants violated clearly established law—an issue that will almost certainly to be taken up on the pending appeal.

Assuming the Court would retain jurisdiction, a stay is nevertheless appropriate. "Caselaw from this circuit supports staying all proceedings pending an appeal of a denial of qualified immunity to fewer than all defendants if doing so will foster judicial economy and judicial administration."  *Sexton v. Cernuto*, No. 19-12574, 2021 WL 949541, at *4 (E.D. Mich. Mar. 12, 2021) (collecting cases).  In the present case, allowing the trial to proceed against the City of Newport during the pendency of the appeal by the Individual Newport Defendants would likely waste judicial resources.  For instance, an affirmance by the Sixth Circuit Court of Appeals on any of the claims against the Individual Newport

Defendants would result in the need for a second trial.  Alternatively, in the event the Sixth Circuit reverses on the ground that Newport's officers committed no constitutional violation, Plaintiff would have no claim against the City of Newport, and any trial would have been pointless.  See *D'Ambrosio v. Marino*, 747 F.3d 378, 391 (6th Cir. 2014) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the municipality might have authorized unconstitutional conduct is quite beside the point.") (alteration omitted) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Moreover, the same would be true if the Sixth Circuit reversed the denial of summary judgment based on the "clearly established" prong of the two-part qualified immunity test.  In situations where an officer violated law that was not clearly established, his municipal employer cannot be held liable on a failure-to-train theory such as the one brought by Plaintiff against the City of Newport.[2]  See *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017).

Given the significant risk of duplicative or pointless litigation, the City of Newport's Motion to Stay is **granted**.  Having stayed the trial for the City of Newport, the Court will also **stay** the trial against the Individual Newport Defendants pending their appeal.  This is sensible given that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" which would be "effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[2]  The cases Plaintiff claims are to the contrary, including *Garner v. Memphis Police Dep't*, F.3d 358, 365 (6th Cir. 1993), *Richko v. Wayne Cnty.*, 819 F.3d 907, 920 (6th Cir. 2016), and *Doe v. Sullivan Cnty.*, 956 F.2d 545, 553-54 (6th Cir. 1992), (Doc. # 311 at 7), are distinguishable because they did not involve failure-to-train theories and thus required a lower standard of fault. *See Arrington-Bey*, 858 F.3d at 994 (noting the "important differences" between the standards of fault for failure-to-train claims and other kinds of municipal liability claims).

### D. Certification of the Remaining Claims for Immediate Appeal

Having permitted the Individual Newport Defendants' appeal to proceed, and having stayed the trial against all of the remaining Defendants, the Court will grant Plaintiff the opportunity to move for certification of his dismissed claims for immediate appeal under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Any motion must be filed **within ten (10) days from the date of entry of this Order** and must address the factors governing certification under Rule 54(b) as set forth in *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279 (6th Cir. 1986). Those factors are:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneering*, 807 F.2d at 1283.

In addition, **within ten (10) days from the date of entry of this Order**, Plaintiff and/or Defendant City of Newport may move to certify the Court's summary judgment Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That statute provides for permissive appeals from non-final orders upon consent of both the district court and the court of appeals. 28 U.S.C. § 1292(b). A district court may certify an order for interlocutory appeal where: (1) the "order involves a controlling question of law"; (2) "there

13

is substantial ground for difference of opinion" on this question of law; and (3) "immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

## III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Reconsideration (Doc. # 297) is **DENIED**;

(2) Plaintiff's Motion to Certify Appeal as Frivolous (Doc. # 300) is **DENIED**;

(3) The City of Newport's Motion to Stay (Doc. # 301) is **GRANTED**;

(4) The Final Pretrial Conference scheduled for August 12, 2021 and Jury Trial scheduled for August 23, 2021 are **VACATED**;

(5) The Motions in Limine filed on July 22, 2021 are **HELD IN ABEYANCE** pending resolution of the Individual Newport Defendants' interlocutory appeal; and

(6) **Not later than August 6, 2021**, Plaintiff and the City of Newport may file motions to certify the Court's June 24, 2021 Memorandum Opinion and Order for interlocutory appeal. Any **responses** shall be filed **within ten (10) days thereafter**. Any **replies** shall be filed **five (5) days thereafter**.

This 27th day of July, 2021.



Signed By:
*David L. Bunning* DB
United States District Judge

J:\DATA\ORDERS\Cov2016\16-224 Order Denying 297 and 300, Granting 301, and Ordering Briefing.docx